[Civ. No. 30324. Second Dist., Div. Four. Apr. 28, 1967.]

DARBY MANER, Plaintiff and Appellant, v. GERALD T. MYDLAND, Defendant and Appellant.

HERBERT TEPPER, Plaintiff and Appellant, v. GERALD T. MYDLAND, Defendant and Appellant.

ARTHUR C. BENNETT, JR., Plaintiff and Appellant, v. GERALD T. MYDLAND, Defendant and Respondent.

(Consolidated Cases.)

Samuel P. Norton and Nathan Goller for Plaintiffs and Appellants.

Dean R. Pic'l for Defendant and Appellant and Defendant and Respondent.

FOX, J.*—Plaintiffs[1] seek to recover their investment in a stock promotion. Judgment was rendered in favor of Maner and Tepper, but in favor of defendants and against Bennett. Defendants made a motion for a new trial which was granted as to defendant Mydland but denied as to Jones and Lindsey. Maner and Tepper have appealed from the order granting Mydland a new trial, and Mydland has cross-appealed from the judgment in favor of Maner and Tepper. Bennett has appealed from the judgment in favor of defendant in his case.

In April 1961 defendants organized the A.V.T.A. Corporation (known as AVTA Corporation) for the manufacture, sale and distribution of audio-visual teaching aids. It had an authorized capital of $300,000, divided into thirty thousand shares with a par value of $10 each. The three defendants constituted the board of directors and were elected officers of the corporation.

Pursuant to an application to the Department of Investment, Division of Corporations, a permit was issued authorizing the corporation to issue not to exceed 100 of its shares to Jones, Mydland and Ray Heinz at par per share for cash. Pursuant to this permit 80 shares were issued to Jones who was president and 10 shares each to Mydland, who was vice-president and attorney for the corporation, and to Heinz.

We shall now take up these transactions in chronological sequence.

### THE BENNETT STOCK PURCHASE

On July 7, 1961, Bennett purchased five shares of stock in AVTA Corporation for $5,000 from Jones who was to

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

[1] One complaint was filed by Maner. Another was filed by Tepper and Bennett. Jones, Lindsey and Mydland were defendants in each complaint. The cases were consolidated for trial. Separate findings and conclusions of law were made, but a consolidated judgment was rendered.

contribute said funds to the capital of AVTA, and the court found that Bennett's checks were payable to the corporation. The purchase was made under an agreement prepared by Mydland (Exhibit 3) and dated on the day Bennett purchased the stock. Bennett testified that he never had any experience in corporation affairs where a permit was obtained, nor had he purchased stock in a corporation not publicly owned.

The court found "[T]hat at the time of purchasing said shares of stock in AVTA, plaintiff Arthur C. Bennett, Jr. knew that he was purchasing stock which represented a portion of the personal stock holdings in said corporation of defendant James Jones, Jr. and said plaintiff was informed that no permit was required from the Commissioner of Corporations for the purchase of said shares of stock."

Mydland testified that at the time of the purchase of said stock by Bennett he advised Bennett that the consent of the Commissioner of Corporations was necessary where an individual sells stock and the proceeds from the sale inure to the benefit of the corporation which was the case in this transaction. Mydland had discussed this matter by telephone with a deputy in the commissioner's office and he was advised that an application was necessary and the procedure was outlined that should be followed in order to get the required consent. This "included an application and a statement of satisfaction with the transfer by the transferee." No such application was filed with the commissioner and no such statement was signed by Bennett.[2]

On this point the court found that Bennett knowingly participated and aided in the making of the sale of the shares of stock and therefore was *in pari delicto*.

The "Jones stock" was sold to Bennett for the "benefit" of the corporation. A permit or consent for such sale from the Corporations Commissioner was therefore required under section 25152, Corporations Code. And a sale without such permit or consent violated the section. (*Bellerue* v. *Business Files Institute, Inc.,* 61 Cal.2d 488 [39 Cal.Rptr. 201, 393 P.2d 401].) In *Bellerue* the court stated (p. 489):

"Section 25152 of the Corporations Code exempts from the Corporate Securities Law '. . . the sale of securities when (a) made by or on behalf of a vendor not the issuer or under-

[2]Sometime later, "in the fall of 1961," Mydland prepared an "Application for Consent." Forms thereof were signed by Lindsey and Tepper but it does not appear that any of these were ever filed.

writer thereof who, being a bona fide owner of the securities, disposes of his own property for his own account, and (b) the sale is not made, directly or indirectly, for the benefit of the issuer or an underwriter of the security. . . .' A permit for the sale of stock by a vendor who was not the issuer is therefore required when the sale is made for the benefit of the issuer.''

We come now to the question: Was Bennett *in pari delicto* with defendants? We have concluded that he was not.

It must be borne in mind that the purpose of the Corporate Securities Law is to protect the investing public. And the penalties therein provided are leveled against the seller and not the buyer. (*Robbins* v. *Pacific Eastern Corp.*, 8 Cal.2d 241, 278 [65 P.2d 42].) Therefore a purchaser of stock is not *in pari delicto* with the corporation and its directors unless he is equally culpable with them. If such purchaser is not *in pari delicto,* the law accords him relief against the corporation and against any person who aided the corporation in making the sale or participated in the scheme to sell the securities without the requisite permit or consent. (*Randall* v. *Beber,* 107 Cal.App.2d 692, 701 [237 P.2d 994].) Mere knowledge that no permit or consent had been issued does not place a purchaser *in pari delicto.* (*Randall* v. *California Land Buyers Syndicate,* 217 Cal. 594, 598 [20 P.2d 331]; *Taormina* v. *Antelope Min. Corp.,* 110 Cal.App.2d 314, 320-321 [242 P.2d 665].) In *Gormly* v. *Dickinson,* 178 Cal. App.2d 92, 103-104 [2 Cal.Rptr. 650], the court stated: ''Even had the plaintiffs known that the consent of the Commissioner of Corporations would have to be secured before they could receive their stock, they could not be held to be equally culpable with the sellers.'' In holding in *Bellerue* v. *Business Files Institute, Inc., supra,* that plaintiff, a purchaser of stock, was not *in pari delicto* with defendants the court pointed out (pp. 490-491): ''Although plaintiff subsequently became a director of B.F.I., he was not a director at the time he and defendants made the agreement under which he was to lend B.F.I. the sum of $10,000 and pay C.M.C. $10 each for 7½ shares of stock of B.F.I. Therefore, he was not *in pari delicto* with defendants. . . .'' In a footnote the court observed: ''The agreement was made on April 1, 1958, and plaintiff became a director of B.F.I. on May 1, 1958.'' The statement of the court is particularly apposite to the case at bench. Here plaintiff made his stock purchase

and paid for it on July 7, 1961, and then became a director on September 1, 1961, according to the minutes of that date.

In *Tri-Q, Inc.* v. *Sta-Hi Corp.*, 63 Cal.2d 199 [45 Cal.Rptr. 878, 404 P.2d 486], the court, at pages 218-219, elaborated on the applicability of the principle expressed in the phrase *in pari delicto.* The court stated:

"There is no doubt that the general rule requires the courts to withhold relief under the terms of an illegal contract or agreement which is violative of public policy. [Citations.] It is also true that whatever the state of the pleadings, 'when the evidence shows that . . . [a party] in substance seeks to enforce an illegal contract or recover compensation for an illegal act, the court has both the power and duty to ascertain the true facts in order that it may not unwittingly lend its assistance to the consummation or encouragement of what public policy forbids.' (*Lewis & Queen* v. *N. M. Ball Sons,* 48 Cal.2d 141, 147-148 [308 P.2d 713].) These rules are intended to prevent the guilty party from reaping the benefit of his wrongful conduct, or to protect the public from the future consequences of an illegal contract. They do not necessarily apply to both parties to the agreement unless *both are truly* [italics added] *in pari delicto.* In *Norwood* v. *Judd,* 93 Cal.App.2d 276 [209 P.2d 24], it was said (at pp. 288-289 [209 P.2d 24]): 'The rule that the courts will not lend their aid to the enforcement of an illegal agreement or one against public policy is fundamentally sound. The rule was conceived for the purposes of protecting the public and the courts from imposition. It is a rule predicated upon sound public policy. But the courts should not be so enamored with the Latin phrase *"in pari delicto"* that they blindly extend the rule to every case where illegality appears somewhere in the transaction. The fundamental purpose of the rule must always be kept in mind, and the realities of the situation must be considered. . . . where the defendant is the one guilty of the greatest moral fault, and where to apply the rule will be to permit the defendant to be unjustly enriched at the expense of the plaintiff, the rule should not be applied.' "

It is quite apparent that plaintiffs and defendants were not "equally culpable" in this transaction. Bearing in mind that the Corporate Securities Law is for the protection of the public and that the penalties run against the sellers of securities, it would appear clear that it was the duty of defendants to take the steps necessary to make the sale in conformity with the law. This they did not do. It is thus apparent that

the defendants are "guilty of the greatest moral fault" and that plaintiff Bennett and defendants are not "truly" *in pari delicto.* In such circumstances the rule should not be applied. (*Norwood* v. *Judd, supra,* 93 Cal.App.2d, at p. 289; *Tri-Q, Inc.* v. *Sta-Hi Corp., supra,* 63 Cal.2d, at p. 219.)

The portion of the judgment in favor of defendants and against plaintiff Bennett must be reversed.

### TEPPER'S APPEAL

On November 3, 1961, plaintiff Tepper purchased five shares of AVTA stock for which he paid $15,000 by personal check payable to AVTA Corporation. No permit had been issued by the Commissioner of Corporations authorizing the sale of these shares to Tepper, nor had any consent been given by the commissioner for the transfer of these shares from another person to him. Tepper was under the belief that he was purchasing shares not owned by any of the individual defendants, and was under the further belief that defendants had complied with the requirements of the Corporate Securities Law and that said shares were transferred to him in compliance with said laws. The shares were owned by defendant Jones but the sale thereof was made directly for the benefit of the corporation and the proceeds of the sale were deposited in the corporation's bank account and were used in its business.

The court found that "defendants [all of whom were directors and officers of the corporation] did aid, assist and enable defendant AVTA Corporation to participate in a general plan and scheme to sell to plaintiff Herbert Tepper five shares of capital stock of AVTA Corporation for the sum of Fifteen Thousand Dollars ($15,000.00)."

Defendant Mydland knew that a permit or consent from the Commissioner of Corporations was essential to a valid sale of the five shares to Tepper. He had been so informed in a telephone conversation with a deputy in the commissioner's office. He also knew that to make a sale of said shares without such permit or consent would violate section 25152 of the Corporations Code. Yet on the date the sale was made he prepared the contract (Exhibit 8) under which it was made. No application for a permit or consent to transfer said shares was filed with the Commissioner of Corporations' office. Mydland did prepare a document[3] re "Application to Corporation Commis-

---

[3]Said document reads as follows: "We, the undersigned, have hereby authorized the foregoing Application to the Corporation Commissioner for

sioner for his consent to the transfer of shares to us'' which was signed by Lindsey and Tepper.

It would seem unlikely that the Corporations Commissioner would approve a transfer of shares on such an incomplete statement of the transaction. It will be noted (see footnote) that the blanks for the number of shares and consideration are not filled in. Should this information have been furnished the Corporations Commissioner it would seem that the commissioner would have wanted some explanation of how the value of the shares of this corporation had risen in value from a par value of $10 per share since its incorporation on April 24, 1961, to $3,000 per share on November 3, 1961. It would seem that a financial statement, with supporting data showing the increased value of these shares, would have been required by the commissioner before the consent to the transfers of these shares would have been approved.

Mydland gave testimony indicating that he had prepared an application to the commissioner for such approval in addition to the document set forth in footnote 3. He was not, however, able to provide the court with a copy of said proposed application and did not claim that it had been filed with the Corporations Department.

The court rendered judgment against the three individual defendants. They made a motion for a new trial. The court granted the motion as to defendant Mydland on the ground of insufficiency of the evidence and denied the motion as to defendants Jones and Lindsey. Plaintiff Tepper has appealed from the order granting the motion; Mydland has cross-appealed from the original judgment in favor of Tepper.

As pointed out in the Bennett appeal, *supra,* the purpose of the Corporate Securities Law is to protect the investing public and the penalties therein provided are leveled against the seller and not the buyer. Therefore, as pointed out in *Randall* v. *Beber, supra,* p. 701: ''If such a purchaser is not *in pari*

---

his consent to the transfer of shares to us in the amount and for the consideration as set forth opposite our names.

''We, the undersigned, purchased said shares from JAMES JONES, JR., with the knowledge that part or all of said consideration for said shares would be used for and inure to the benefit of the AVTA CORPORATION.

''We are satisfied with said transfer and respectfully request that the Corporation Commissioner give his consent and approval to said transfer.

| Name | Number of Shares | Total of Consideration |
|---|---|---|
| [Signed] Clyde W. Lindsey | 10 | |
| [Signed] Herbert Tepper | | .'' |

534

*delicto*, the law accords him relief against the corporation and *against any person who aided the corporation in making the sale or participated in the general scheme to sell securities.* [Citation.]'' (Italics added.) Tepper's complaint was not only for rescission but also for damages and was based upon the allegation, *inter alia*, that ''defendants did aid, assist and enable defendant AVTA Corporation to participate in a general plan and scheme to sell to plaintiff Herbert Tepper five shares of capital stock of AVTA Corporation,'' which allegation was found by the court to be true. Also, in paragraph 9, for example, Tepper alleged ''that in selling said stock to plaintiff, defendants impliedly represented that the applicable provisions of the Corporate Securities Law had been complied with, when in fact defendants, and each of them, knew such compliance was never obtained, and had plaintiff known that defendants had not complied with the provisions of the Corporate Securities Law, he would not have purchased said five (5) shares of the capital stock of AVTA CORPORATION.''

There is no escape from the fact that Mydland knew that a consent to the transfer of these shares of AVTA Corporation required the consent of the Commissioner of Corporations. He was so advised in a telephone conversation in July 1961 with a deputy in the Corporations Commissioner's office. It is also incontrovertibly established that he knew of the sale of these shares to Tepper because he prepared Exhibit 8 which is the contract dealing with the purchase of these shares and which bore the date of November 3, 1961, which is the same date as that of Tepper's check for $15,000 payable to the order of A.V.T.A. Corporation, namely, November 3, 1961.

Mydland apparently seeks to avoid liability on the theory that he did not personally, either directly or indirectly, profit or gain from any of the funds paid to the corporation in this transaction. If this were solely an action for money had and received there would be some point to his contention, but, as we have pointed out, Tepper's complaint charges fraud on the part of the defendants and seeks damages.

On this point the court stated in *Taormina* v. *Antelope Min. Corp., supra*, 110 Cal.App.2d 314, 320: ''. . . it is also the law that a person who sells a security impliedly represents that a permit therefor has been secured when one is required by law for such a sale, and if this implied representation is false, then it is a negligent misrepresentation which is an actionable fraud *(Mary Pickford Co.* v. *Bayly Bros., Inc.,* 12 Cal.2d 501, 525

[86 P.2d 102]) ; and where, as here, the action is for damages for fraud, recovery may be had against all persons participating in the fraud, whether they received a portion of the money paid or not [citation].''

In *Randall* v. *Beber, supra,* 107 Cal.App.2d 692, at page 701, the court stated: ''When the purchaser's action is for damages (as in this case), such a participant need not have received any of the consideration paid for the stock,'' citing *Randall* v. *California Land Buyers Syndicate,* 217 Cal. 594, 598-599 [20 P.2d 331]. In *Tevis* v. *Blanchard,* 122 Cal.App.2d 731, at page 738 [266 P.2d 85], the court cited *Randall* v. *Beber, supra,* and *Randall* v. *California Land Buyers Syndicate, supra,* stating: ''In an action for money had and received against a participant in the sale, such as an officer of the corporation making the sale, the buyer's right to recover is limited to the value of that which that participant received ; not so limited if the buyer's action is for damages'' as in the instant case.

It thus appears that a permit or the consent of the Commissioner of Corporations was necessary to make a valid sale and transfer of the stock in question ; that Mydland knew this as a fact ; that no such permit or consent was given by the commissioner ; that Mydland had a part in effectuating the sale to Tepper ; and that this is an action for damages. With these essential facts incontrovertibly established there was no basis for granting Mydland's motion for a new trial.

The order granting Mydland a new trial must be reversed.

In view of the foregoing we cannot reverse the judgment in favor of Tepper and against Mydland.

The judgment must be affirmed.

MANER'S APPEAL

Plaintiff Maner purchased 10 shares of A.V.T.A. Corporation stock for $5,000 on or about February 16, 1962. The sale was handled by Jones and Lindsey. The stock stood in the name of Jones. The purchase price went into the bank account of the corporation. Maner testified that, in a conversation with Mydland sometime during the first two weeks of February (prior to the purchase of the stock), the latter told him that the corporation had a permit to issue the shares originally to Jones and since these were Jones' shares, a further permit was not necessary. On cross-examination Maner was asked this question: ''Did you discuss this pur-

chase with anyone other than Mr. Lindsey and Mr. Jones prior to your purchase of the stock? A. No.''

Mydland testified: ''I was not aware of the Maner transaction.'' He then gave this further testimony relative to the transaction:

''A. I was not aware until sometime after Mr. Mander [*sic*] had given the funds to Mr. Jones or Mr. Lindsey that this transaction had taken place. I did have several conversations with Mr. Maner and I believe his then attorney, Jim Mitchell, about the fact that there was not—there was a permit for the original issue of 100 shares, that it would be necessary to secure the consent of the Corporations Commissioner to transfer stock since some of the proceeds or all of the proceeds would be used for the benefit of the corporation.''

The Corporations Commissioner did not grant any permit or give consent for the transfer of these shares to Maner as required by section 25152 of the Corporations Code since the sale was made ''for the benefit'' of the corporation. (*Bellerue* v. *Business Files Institute, Inc., supra,* 61 Cal.2d 488, 489.) The sale was therefore in violation of the section and invalid.

The court rendered judgment for plaintiff against all defendants. Defendants made a motion for a new trial. The motion was granted as to Mydland and denied as to Jones and Lindsey. Plaintiff has appealed from the order granting Mydland a new trial. Mydland has cross-appealed from the judgment.

The motion for a new trial was made on the ground of insufficiency of the evidence and was granted (as to Mydland) on that ground. Thus, the court had the opportunity to re-examine and re-evaluate the evidence, and this the court presumptively did.

It will be recalled: (1) that Mydland testified he was unaware of this transaction until sometime after it had taken place, and (2) that plaintiff Maner testified that he did not discuss this stock purchase ''with anyone other than Mr. Lindsey and Mr. Jones prior'' to making it. Hence, the court could properly conclude that Mydland did not personally participate in the sale, and had no knowledge of it until after it had taken place and the consideration paid.

As to the conflict in the testimony of Maner and Mydland as to what the latter told him some time before the deal was made, the court, in re-evaluating the testimony, may have come to the conclusion that Mydland told plaintiff that it

would be necessary to secure the consent of the Corporations Commissioner to transfer the stock since he had been so advised by a deputy in the commissioner's office in July 1961 in connection with the Bennett transaction, and that Maner was simply mistaken on this point. Hence, the court could have determined that Mydland did not make any misrepresentation relative to securing the commissioner's consent to transfer such stock.

In this factual context, it cannot be said that the court abused its discretion in granting Mydland a new trial.

The order must be affirmed.

Since we must affirm the order granting Mydland a new trial, his cross-appeal from the judgment is moot and should be dismissed.

1. The portion of the consolidated judgment in favor of defendants and against plaintiff Bennett is reversed.

2. The order granting Mydland a new trial in the Tepper case is reversed.

3. The portion of the consolidated judgment in favor of Tepper and against Mydland is affirmed.

4. The order granting Mydland a new trial in the Maner case is affirmed.

5. Mydland's cross-appeal from the judgment in the Maner case is dismissed.

Jefferson, Acting P. J., and Kingsley, J., concurred.

A petition for a rehearing was denied May 16, 1967.