[No. G007170. Fourth Dist., Div. Three. Jan. 30, 1990.]

ALBERT D. EISENBAUM, Plaintiff and Appellant, v.
WESTERN ENERGY RESOURCES, INC., et al., Defendants and
Respondents.

## COUNSEL

A. Charles Dell'Ario for Plaintiff and Appellant.

Tredway, Brandmeyer, Brazelton & Lumsdaine, Jeffrey B. Singer and Fred M. Walker for Defendants and Respondents.

## OPINION

**STANIFORTH, J.**\*—Plaintiff Albert D. Eisenbaum seeks recovery of $136,363 paid to purchase a limited partnership interest in the Montejas Partners-82 Ltd., a Colorado limited partnership (Montejas) formed for oil and gas exploration. The defendant, Colorado-Seahawk, Inc., is the successor entity to Montejas Energy Resources, Inc. (MERI), a general partner of Montejas. Defendant Western Energy Resources, Inc. (WERI) is the successor to Montejas. Defendant Seahawk Oil International, Inc. (Seahawk) is the parent corporation of Colorado-Seahawk, Inc.

The limited partnership interest in Montejas was sold to Eisenbaum on June 21, 1982, after oral and written communications exchanged between officers of MERI in Denver and Eisenbaum at his home in California. The security was not qualified for sale by the California Department of Corporations and was not exempt from qualification. Thus, the security interests sold to Eisenbaum were in violation of California Corporations Code section 25110.[1] Such a delict authorizes the remedies set forth in Corporations Code section 25503.

The trial court granted summary judgment in favor of defendants Seahawk and Colorado-Seahawk, finding as a matter of law Eisenbaum had discovered "the facts constituting such violation" more than one year prior

---

\* Retired Associate Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.

[1] All statutory references are to the Corporations Code unless otherwise specified.

to commencement of the action. Eisenbaum appeals the judgment. He also appeals from the order denying his motion for summary judgment and denying adjudication of certain issues as being without substantial controversy.

Eisenbaum was first contacted in Denver, Colorado, in April 1982 by Edward Goldin, president of MERI, on behalf of Montejas. Goldin told Eisenbaum if he wanted to buy the security he would have to list a Colorado address on the subscription documents. The reason given? Goldin was not licensed to sell in California. At or before the time he purchased the security and invested in the limited partnership, Eisenbaum was told MERI was not permitted to sell securities in the State of California. "[I]f I wished to purchase the securities I would need to utilize a Colorado address, such as my brother's vacation home or the like." Eisenbaum told Goldin he was a California resident, not a Colorado resident. Eisenbaum did not execute any documents in Colorado but returned to California with the prospectus. He later made telephone calls to Goldin in Colorado with questions about the partnership investment.

Thereafter all of Eisenbaum's dealings with Montejas were conducted between California and Colorado. After several telephone conversations with Goldin, Eisenbaum forwarded an investor's questionnaire containing his California address. He was told the official documents could have no mention of California. Goldin mailed the subscription agreement and other documents from Denver to Eisenbaum's home in California. Among the documents Eisenbaum received was a private placement memorandum which told him, in essence, that the investment was exempt from registration with the state. Thereafter Eisenbaum signed the subscription agreement and made payments commencing on June 21, 1982, of $10,000, $90,000 and $36,363, a total of $136,363, for the limited partnership interest.

As successor general partner, Colorado-Seahawk dissolved Montejas in 1983 and in 1985 negotiated a sale of all Montejas's assets to defendant WERI in exchange for WERI stock and an assumption of Montejas's liabilities. Eisenbaum received 36,048 WERI shares for his limited partnership interest.

The partnership did not succeed financially. On June 13, 1984, Eisenbaum commenced this action for recission and damages based upon violation of the California Corporate Security Law. He alleged a failure to qualify the issuance of the securities in California.

Defendants' motion for summary judgment was based upon the one-year statute of limitations of section 25507, subdivision (a). At the hearing on the

motion, the trial court determined the security had been sold to Eisenbaum in violation of the corporate securities laws, and that Colorado-Seahawk and WERI had successor liability to MERI and Montejas respectively. However, the court concluded Eisenbaum had discovered the facts constituting the violation more than a year before filing his complaint; therefore, his action was barred by the statute of limitations.

In a supplemental declaration, Eisenbaum said Goldin told him he was unlicensed to sell investments in California, but did not tell him "the law would deem the transaction to occur in California regardless of what address [was] used or that the transaction violated any law."

In a document furnished by Goldin to Eisenbaum before the sale, Montejas represented the transaction was exempt from qualification under federal and state securities laws. The private placement memorandum to the prospective investor states: "The units are being offered and sold without registration under the Securities Act of 1933, as amended (the 'Securities Act'), or under any state securities law in reliance on the exemption afforded by section 4(2) of the Securities Act and rule 506 of the Securities and Exchange Commission and similar exemptions under applicable state laws. The units may not be subsequently offered or sold by the purchasers in this placement unless registered under the Securities Act and applicable state securities laws or unless exemptions from the registration requirements thereof are available, as established to the satisfaction of the general partner. . . ."

In sum, Eisenbaum's evidence before the trial court showed he was told MERI was not "permitted" or "qualified" or "licensed" to sell investments in California but that the transaction was proper because of *"exemptions under applicable state laws."*

## I

The sale to Eisenbaum violated section 25110 which provides: "It is unlawful for any person to offer or sell in this state any security in an issuer transaction (other than in a transaction subject to Section 25120), whether or not by or through underwriters, unless such sale has been qualified under Section 25111, 25112 or 25113 . . . or unless such security or transaction is exempted under Chapter 1 (commencing with Section 25100) of this part." The trial court found the securities were neither qualified nor exempted.

Section 25503 provides in part: "Any person who violates Section 25110 . . . or a condition of qualification under Chapter 2 . . . shall be liable to any person acquiring from him the security sold in violation of such section,

who may sue to recover the consideration he paid for such security with interest thereon at the legal rate, less the amount of any income received therefrom, upon the tender of such security, or for damages, if he no longer owns the security, or if the consideration given for the security is not capable of being returned."

The statute of limitations applicable to a section 25503 violation is found in section 25507, subdivision (a) of the Corporations Code which provides: "No action shall be maintained to enforce any liability created under Section 25503 . . . unless brought before the expiration of two years after the violation upon which it is based *or the expiration of one year after the discovery by the plaintiff of the facts* constituting such violation, whichever shall first expire." (Italics added.)

In this context Eisenbaum contends he did not know (1) factually or legally that the transaction took place in California, nor that (2) the transaction was not exempted under California law, *until the spring of 1984 after he consulted an attorney.* A few months later he filed this lawsuit. He relies upon *Sherman* v. *Lloyd* (1986) 181 Cal.App.3d 693 [226 Cal.Rptr. 495] as controlling authority authorizing recovery. There, Sherman, a prospective partner, was told by Lloyd, a promoter of partnership interests, that two separate partnerships of ten persons or less were being formed so that they would be exempt from qualification under state law. The court held that because of the fiduciary relationship between Sherman and Lloyd, Sherman could properly rely upon Lloyd's representations about the exemption and the statute of limitations did not begin to run until Sherman received legal advice to the contrary.

## II

Colorado-Seahawk argues *Sherman* is distinguishable because the court expressly found a *fiduciary relationship* existed between Sherman and Lloyd *before* Sherman was entitled to rely upon the seller's statements concerning the propriety of the investment structure. The *Sherman* court pointed out that at the time Sherman purchased his "interest," he was told by Lloyd that there would be no problem. Sherman was also aware of the manner in which the investment was being structured and he was told the arrangement was proper. The court said Sherman could rely upon this advice "particularly since Lloyd was the general partner" of the seller. (*Sherman* v. *Lloyd, supra,* 181 Cal.App.3d at p. 698.) Said the court: "We cannot interpret California law to require that such advice be taken lightly." (*Id.* at p. 699.)

## III

Assuming a fiduciary relationship is essential to apply the *Sherman* v. *Lloyd* rule allowing the later filing (one year from date of discovery), the

facts before the trial court warrant the conclusion defendants (MERI and WERI through Goldin) occupied a position of trust, and owed a fiduciary duty to those they sought to entice into the venture as limited partners.

"A fiduciary relation arises whenever confidence is reposed on one side, and domination and influence result on the other; the relation can be legal, social, domestic, or merely personal." (*Matter of Estate of Heilman* (1976) 37 Ill.App.3d 390 [345 N.E. 2d 536, 540]; see also *Pryor* v. *Bistline* (1963) 215 Cal.App.2d 437, 446 [30 Cal.Rptr. 376] and cases cited.)

" 'Confidential and fiduciary relations are, in law, synonymous, and may be said to exist whenever trust and confidence is reposed by one person in the integrity and fidelity of another. The very existence of such a relation precludes the party in whom the trust and confidence is reposed from participating in profit or advantage resulting from the dealings of the parties to the relation.' [Citations.]" (*Twomey* v. *Mitchum, Jones & Templeton, Inc.* (1968) 262 Cal.App.2d 690, 708 [69 Cal.Rptr. 222].)

In *Main* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1977) 67 Cal.App.3d 19, 31 [136 Cal.Rptr. 378], it was said: "A confidential relationship 'may be said to exist whenever trust and confidence is reposed by one person in the integrity and fidelity of another.' [Citations.] And where the person in whom such confidence is reposed, by such confidence obtains any control over the affairs of the other, a trust or fiduciary relationship is created."

" 'When a fiduciary enters into a transaction with a beneficiary whereby the fiduciary's position is improved, or he obtains a favorable opportunity, or where he otherwise gains [*sic*] benefits, or profits, it may fairly be said that an advantage has been obtained.' " (*Rader* v. *Thrasher* (1962) 57 Cal.2d 244, 250 [18 Cal.Rptr. 736, 368 P.2d 360], quoting from *Bradner* v. *Vasquez* (1954) 43 Cal.2d 147, 152 [272 P.2d 11].)

In *Kent* v. *First Trust & Savings Bank* (1950) 101 Cal.App.2d 361, 370 [225 P.2d 625] it is said: "The amount of evidence necessary to establish a confidential relationship ordinarily rests with the trier of facts." From Eisenbaum's factual assertions it may be reasonably inferred he reposed confidence and trust in defendants, who gained a financial advantage over him by this sale, and therefore owed him a fiduciary duty.

## IV

A promoter or insider, or a seller of a limited partnership interest, owes a fiduciary duty to the prospective purchaser of such an interest. The

seminal decision on common law duties of a promoter to the purchaser of a security interest is *California-Calaveras Mining Co.* v. *Walls* (1915) 170 Cal. 285 [149 P. 595].) More recently, in *Hobbs* v. *Bateman Eichler, Hill Richards, Inc.* (1985) 164 Cal.App.3d 174 [210 Cal.Rptr. 387], the obligation of a broker to a customer was at issue. The Court of Appeal said: " ' "The relationship between broker and principal is fiduciary in nature and imposes on the broker the duty of acting in the highest good faith toward the principal. [Citations.]" ' " (*Id.* at p. 201; see also *Twomey* v. *Mitchum, Jones & Templeton, Inc., supra,* 262 Cal.App.2d at p. 709.)

And in *Pusateri* v. *E. F. Hutton & Co.* (1986) 180 Cal.App.3d 247 [225 Cal.Rptr. 526] the court stated: "It is undisputed that during the relevant period Nee was acting as an authorized officer or managing agent of E. F. Hutton and that Johnson, as plaintiffs' broker, was a fiduciary owing a high duty to act in good faith and to render a full and fair disclosure of all facts affecting their rights and interests." (*Id.* at p. 253.)

Whether the seller be broker, promoter, partner, corporate agent, insider, or limited partnership syndicator, the rules imposing a fiduciary duty are rooted in the reasoning of Judge Learned Hand in *Gratz* v. *Claughton* (1951) 187 F.2d 46, cert. den. 341 U.S. 920 [95 L.Ed. 1353], where he wrote: "For many years a grave omission in our corporation law had been its indifference to dealings of directors or other corporate officers in the shares of their companies. When they bought shares, they came literally within the conventional prohibitions of the law of trusts; yet the decisions were strangely slack in so deciding. When they sold shares, it could indeed be argued that they were not dealing with a beneficiary, but with one whom his purchase made a beneficiary. *That should not, however, have obscured the fact that the director or officer assumed a fiduciary relation to the buyer by the very sale*; for it would be a sorry distinction to allow him to use the advantage of his position to induce the buyer into the position of a beneficiary, although he was forbidden to do so, once the buyer had become one. *Certainly this is true, when the buyer knows he is buying of a director or officer, for he expects to become the seller's cestui que trust.* If the buyer does not know, he is entitled to assume that if his seller in fact is already a director or officer, he will remain so after the sale. Nor was it necessary to confine this disability to directors or other officers of the corporation. *The reason for the doctrine was that a director or officer may have information not accessible to a shareholder, actual or prospective, and that advantage is not confined to them.*" (*Id.* at p. 49, italics added.)

In *Cady, Roberts & Co.* (1961) 40 S.E.C. 907, the Securities and Exchange Commission adopted Judge Hand's reasoning declaring: "An affirmative duty to disclose material information has been traditionally im-

posed on corporate 'insiders,' particularly officers, directors, or controlling stockholders. We, and the courts have consistently held that insiders must disclose material facts which are known to them by virtue of their position but which are not known to persons with whom they deal and which, if known, would affect their investment judgment.'" (*Id.* at p. 911.)

The United States Supreme Court in *Chiarella* v. *United States* (1980) 445 U.S. 222 [63 L.Ed.2d 348, 100 S.Ct. 1108], also expressly approved Judge Hand's reasoning saying, "that the relationship between a corporate insider and the stockholders of his corporation gives rise to a disclosure obligation is not a novel twist of the law." (*Id.* at p. 227 [63 L.Ed.2d at p. 356].) In analyzing *Cady, Roberts & Co., supra,* 40 S.E.C. 907, the court further stated: "The duty arose from (i) the existence of a relationship affording access to inside information intended to be available only for a corporate purpose, and (ii) the unfairness of allowing a corporate insider to take advantage of that information by trading without disclosure." (*Chiarella, supra,* 445 U.S. at p. 227 [63 L.Ed.2d at p. 356].)

We conclude an insider-promoter such as Goldin had both a common law and statutory duty to disclose all material facts to a subscriber such as Eisenbaum. As a matter of law there was an obligation of trust and a fiduciary duty owed to Eisenbaum, the buyer of a limited partnership interest.

### V

Where a fiduciary obligation is present, the courts have recognized a postponement of the accrual of the cause of action until the beneficiary has knowledge or notice of the act constituting a breach of fidelity. (*United States Liab. Ins. Co.* v. *Haidinger-Hayes, Inc.* (1970) 1 Cal.3d 586, 596 [83 Cal.Rptr. 418, 463 P.2d 770]; *Sherman* v. *Lloyd, supra,* 181 Cal.App.3d 693, 698; *Schneider* v. *Union Oil Co.* (1970) 6 Cal.App.3d 987, 994 [86 Cal.Rptr. 315].) The existence of a trust relationship limits the duty of inquiry. "Thus, when a potential plaintiff is in a fiduciary relationship with another individual, that plaintiff's burden of discovery is reduced and he is entitled to rely on the statements and advice provided by the fiduciary." (*Sherman* v. *Lloyd, supra,* 181 Cal.App.3d at p. 698.)

In *Sherman,* the general partner told plaintiff the structure of the partnership in which he was investing complied with California law. *Sherman* held "case law has recognized that the recipient of such advice will quite appropriately give it substantial weight" (181 Cal.App.3d at p. 699), and "[s]ince [plaintiff] was in a fiduciary relationship with [defendant], he was entitled to rely on [defendant's] statements concerning the propriety of the investment structure. As such, [plaintiff's] cause of action did not accrue until he

learned from counsel that the investment structure may have been improperly created." (*Id.* at p. 700.)

As to the effect of that fiduciary relationship on accrual of the cause of action, the court in *Hobbs v. Bateman Eichler, Hill Richards, Inc., supra,* 164 Cal.App.3d 174, said: "Where a fiduciary relationship exists, facts which ordinarily require investigation may not incite suspicion [citation] and do not give rise to a duty of inquiry [citation]. Where there is a fiduciary relationship, the usual duty of diligence to discover facts does not exist. [Citation.]" (*Id.* at pp. 201-202.)

Thus, a plaintiff need not establish that due diligence was exercised to discover the facts within the limitations period unless a duty existed to inquire, and the circumstances were such that failure to inquire would be negligent. (2 Witkin, Cal. Procedure (2d ed. 1970) Actions, § 340, p. 1182.) *Where the plaintiff is not under such duty to inquire, the limitations period does not begin to run until plaintiff actually discovers the facts constituting the cause of action, even though the means for obtaining the information are available.* (*Hobart v. Hobart Estate Co.* (1945) 26 Cal.2d 412, 438 [159 P.2d 958].)

The distinction between the rules excusing a late discovery of fraud and those allowing late discovery in cases "in the confidential relationship category is that in the latter situation *the duty to investigate may arise later by reason of the fact that the plaintiff is entitled to rely upon the assumption that his fiduciary is acting in his behalf.*" (*Bedolla v. Logan & Frazer* (1975) 52 Cal.App.3d 118, 131 [125 Cal.Rptr. 59], italics added.)

## VI

Even if we were to turn our collective back on the foregoing rules giving rise to a fiduciary duty here, the lack of a fiduciary relationship between Eisenbaum and MERI would not be decisive on the statute of limitations issue. ■ The critical focus here is found in the language of the section 25507, subdivision (a), which requires "*discovery . . . of the facts.*" (Italics added.) The statute requires Eisenbaum's *actual knowledge of the facts before the one-year statute commences to run.*[2] By its plain language, the statute requires actual knowledge, not just "inquiry notice." This conclusion is buttressed by a comparison of the language of section 25506.1 which establishes a statute of limitations for fraud liability imposed upon certain persons who "expertise" a prospectus. This latter section expressly man-

---

[2] The trial court erred as a matter of law when it expressed its opinion that the knowledge Eisenbaum obtained was enough to put him on "inquiry notice" so as to commence the running of the one-year statute of limitations.

dates a one-year limitation "after such discovery should have been made *by the exercise of reasonable diligence.*" (§ 25506.1, italics added.) Here *the statute of limitations requires the party wronged to have actual notice of the illegality before the one year begins to run.* This is the significant and controlling distinction in the statutory language.

## VII

 The next question is: What actual knowledge of the facts did Eisenbaum have at any time prior to the advice by his lawyer that the security was nonexempt? He declared he was told that the transaction was legal and the memorandum of April 30, 1982, (furnished by Goldin) stated the transaction was "*exempt from qualification under federal and state securities laws.*" (Italics added.)

In substance he was told, as in *Sherman,* that no wrong was committed and no cause of action existed. Goldin also said he had to use a Colorado address, although defendants knew Eisenbaum was a California resident. Possessed of this knowledge, the duty was upon Goldin, the professional syndicator, to determine whether he could lawfully sell to Eisenbaum. Instead, he falsely represented the sale was legal under both the federal and state security laws.

Colorado-Seahawk contends Eisenbaum had discovered all the facts which constituted the violation in his discussions with Goldin; he was aware that sale of the security was not permitted *in* the State of California. They point to Eisenbaum's admission he knew he did not purchase the limited partnership interest until after he returned to his home in California. This assertion misses the point of Eisenbaum's factual presentation. *He has written evidence he was told the limited partnership interest was exempt, and therefore legal under state law.*

From the foregoing factual context we conclude: (1) There was a fiduciary relationship existing between the defendant sellers and Eisenbaum, and they owed the highest duty of good faith to him; and (2) the usual duties of diligence to discover facts did not exist. Eisenbaum was entitled to rely upon the assumption his fiduciaries were acting on his behalf and not telling him an untruth about the legality of the transaction.

## VIII

The defendants finally contend by reason of Eisenbaum's cooperation in using a Colorado address he was participating in the illegality, therefore he was in pari delicto. It is argued he has "unclean hands," and therefore cannot recover by reason of his own wrongdoing.

█ Eisenbaum's right to recover is based upon the statutory cause of action found in section 25503. It is in no way dependent upon equitable principles. Secondly, defendants' various defenses were based upon the theory that Eisenbaum cooperated with MERI in making the sale appear as though it were to a Colorado resident. Section 25701 as interpreted in *Hall v. Superior Court* (1983) 150 Cal.App.3d 411 [197 Cal.Rptr. 757] provides the complete answer to this contention.

█ "California's policy is to protect the public from fraud and deception in securities transactions. The Corporate Securities Law of 1968 was enacted to effectuate this policy by regulating securities transactions in California and providing statutory remedies for violations of the Corporations Code, in addition to those available under common law." (150 Cal.App.3d at p. 417.)

█ *Hall* v. *Superior Court, supra,* held, "[T]he cornerstone of the law is section 25701, which provides, 'Any condition, stipulation or provision purporting to bind any person acquiring any security to waive compliance with any provision of this law . . . is void.' Section 25701 applies where there is an offer to sell or buy securities in California. The facts before us . . . support the notion that an offer to sell or buy a security was made in this state (§§ 25008, subds. (a) & (b), 25017), *and the parties may not waive or evade the application of California law to the transaction by private agreement.*" (150 Cal.App.3d at p. 417, fns. omitted, italics added.)

Any agreement between Eisenbaum and Montejas to conceal the fact that the sale would occur "in this state" amounts to a "private agreement" to "evade the application of California law" made void by section 25701. (150 Cal.App.3d at p. 417; see also *Holmberg* v. *Marsden* (1952) 39 Cal.2d 592 [248 P.2d 417].) An agreement on Eisenbaum's part to use a Colorado address would be an agreement to waive compliance with the provisions of the law and therefore void under section 25701. We conclude the in pari delicto doctrine is not applicable under the facts of this case. (*Maner* v. *Mydland* (1967) 250 Cal.App.2d 526, 530-532 [58 Cal.Rptr. 740].)

## IX

█ Eisenbaum also contends his motion for summary judgment was improperly denied. He points to three issues upon which he claims the trial court erroneously failed to find in his favor: (1) Eisenbaum was sold his interest "before and on June 21, 1982"; (2) his cause of action was not barred by the statute of limitations; and (3) his conduct did not bar or diminish his right to recovery. We agree that the trial court correctly denied summary adjudication on the first issue; the language used by Eisenbaum—

"before and on June 21, 1982"—*is* ambiguous. And, as to the third issue, we cannot say as a matter of law there is no possibility Eisenbaum's conduct could diminish his recovery. The denial of his motion for summary judgment was proper. However, based upon our holding, Eisenbaum's motion for summary adjudication of the statute of limitations issue (denoted as #7 in his moving papers) should have been granted.

The judgment is reversed and the cause remanded with directions to deny defendants' motion for summary judgment and to grant plaintiff's motion for summary adjudication of issue No. 7.

Scoville, P. J., and Sonenshine, J., concurred.