**In re Mark Alan ABRAMS and Peggy Rubel Abrams, Debtors.**

**Mark Abrams, Appellant,**

**v.**

**Sea Palms Associates, Ltd.; Harold Jasper; and Harriet Jasper, Appellees.**

BAP No. CC–97–1709–RIJB.
Bankruptcy No. SA 89–07876–JB.
Adversary No. SA 90–00462–JB.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted on Sept. 24, 1998.

Decided Jan. 29, 1999.

Fritz J. Firman, Santa Ana, CA, for Mark Alan Abrams.

Harold S. Jasper, Harriet S. Jasper, Corona del Mar, CA, for appellees pro se.

Before RIMEL [1], JONES and BRANDT, Bankruptcy Judges.

## OPINION

RIMEL, Bankruptcy Judge.

Defendant–Appellant Mark Abrams appeals the bankruptcy court's judgment after trial awarding Plaintiffs–Appellees Harold and Harriet Jasper judgment for $1,977,000 and determining that debt to be nondischargeable pursuant to Bankruptcy Code section 523(a)(2)(B), and awarding Plaintiff–Appellee Sea Palms, Associates, Ltd. (collectively with Harold and Harriet Jasper, "Appellees") judgment for $29,970 and determining that debt to be nondischargeable pursuant to Bankruptcy Code [2] section 523(a)(4). For the reasons set forth herein, the bankruptcy court's decision is **AFFIRMED**.

### 1. Facts.

Mark Abrams ("Abrams") and Harold Jasper ("Jasper") were the primary players in a land-development deal designed to build an apartment complex in Costa Mesa, California, in 1988 and 1989. Jasper and his wife Harriet (the "Jaspers") owned a large plot of land worth approximately $3,900,000, and Abrams had indicated to Jasper that he was experienced in developing and building large projects. On March 1, 1988, Sea Palms Associates, Ltd. ("Sea Palms") was formed. The limited partners of Sea Palms were the Jaspers, Karen Jasper, and Margie and Richard Deutsch. The sole general partner of Sea Palms was another limited partnership, ABWA Associates ("ABWA"). The general partners of ABWA were Mark and Peggy Abrams, and the limited partners of ABWA were Herbert and Lois Abrams (Mark Abrams' parents) and Ezzat and Vivan Wassef. The relationships between the entities are as set forth below with the parties to this appeal underlined.

---

1. Hon. Whitney Rimel, Bankruptcy Judge for the Eastern District of California, sitting by designation.

2. Unless otherwise indicated, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all section, § , and chapter references are to the Bankruptcy Code, Title 11, U.S.C.

| Sea Palms Associates, Ltd., a limited partnership | |
| --- | --- |
| General Partner of Sea Palms:<br>ABWA Associates,<br>a limited partnership | Limited Partners of<br>Sea Palms:<br>Harold and Harriet Jasper<br>Karen Jasper<br>Margie and Richard Deutsch |
| General Partners of ABWA:<br>Mark and Peggy Abrams | Limited Partners of ABWA:<br>Herbert and Lois Abrams<br>Ezzat and Vivan Wassef |

Abrams provided financial statements for himself and his wife to the Jaspers at the time the Jaspers were choosing a partner or partners for the development of their land parcel. Other information Abrams proffered to the Jaspers indicated that Mark Abrams had extensive experience in large developments and had substantial access to construction funding.

In exchange for committing their parcel to the partnership, the Jaspers received $1,950,-000 plus a second deed of trust on the property securing a note for the remaining $1,950,000. An additional note for $50,000 was subsequently provided to the Jaspers. The Jaspers also received a 50% stake in Sea Palms. Sea Palms obtained construction financing and retained Abrams Development, Inc. ("ADI") as general contractor for the project. Mark Abrams was president of ADI and executed all construction loan draw requests.

The Sea Palms project did not proceed as anticipated and, based on alleged embezzlement and conversion of partnership funds and other wrongdoing by Mark Abrams, ABWA was removed as general partner of Sea Palms in April 1989 and replaced by an entity organized by the Jaspers. Mark and Peggy Abrams filed a chapter 7 petition in 1989.

On June 4, 1990, the Appellees initiated this adversary proceeding against both Mark and Peggy Abrams, alleging fraud, fiduciary fraud, conversion, and violation of RICO [3] statutes. The complaint requested money damages and determinations of nondischargeability pursuant to section 523(a)(2),

(4), and (6). A joint pretrial order was filed July 23, 1992, but trial did not begin until mid-1993, and closing arguments were not heard until November 1996. By the Jaspers' count, the trial covered three and a half years, thirty-five hearing dates, and the admission of eighty-eight exhibits. On July 5, 1995, the bankruptcy court granted judgment on partial findings pursuant to Fed. R.Bankr.P. 7052(c) in favor of defendant Peggy Abrams on all claims and dismissed her from the proceedings.

On July 18, 1997, the bankruptcy court held a hearing to render judgment, at which time findings and judgments were read into the record, but not entered. Among the court's findings was the determination that "Mark Abrams published and promulgated a false financial statement to the Jaspers in June of 1987 with the intent to deceive the Jaspers and that the reliance on that misrepresentation as to financial condition of Mark Abrams ... was reasonable."

The preliminary judgment announced on July 18, 1997, awarded the Jaspers $1,977,-000 and held that debt nondischargeable under section 523(a)(2)(B), and awarded Sea Palms $540,200 and held that debt nondischargeable under section 523(a)(4). By virtue of Peggy Abrams' prior dismissal, Mark Abrams was the only party found liable. On September 17, 1997, the bankruptcy court rendered its final judgment, leaving the judgment for the Jaspers intact but reducing the award to Sea Palms to $29,970 after finding the evidence insufficient to support the

3. Racketeer Influenced and Corrupt Organiza- tions Act, 18 U.S.C. §§ 1961–1968.

court's preliminary ruling. Abrams filed a timely notice of appeal.

## 2. Issues on Appeal.

A. Whether the Jaspers submitted sufficient evidence to prove the damages and reliance elements of their section 523(a)(2)(B) claim.

B. Whether Abrams was a fiduciary of Sea Palms Associates, Ltd. within the meaning of section 523(a)(4).

## 3. The Standard of Review.

Findings of fact by the bankruptcy court "shall not be set aside on appeal unless clearly erroneous." Fed.R.Bankr.P. 8013; see In re Johnston, 49 F.3d 538, 540 (9th Cir.1995). The clearly erroneous standard also applies to findings of materiality, intent to defraud, reliance, and proximate cause in section 523(a)(2)(B) cases. In re Candland, 90 F.3d 1466, 1469 (9th Cir.1996). The existence of a fiduciary relationship for purposes of section 523(a)(4) is a question of law which the panel reviews de novo. Ragsdale v. Haller, 780 F.2d 794, 795 (9th Cir.1986).

## 4. Discussion.

 The Jaspers, in their "Appellee's Opening Brief," addressed several issues not raised by Abrams in this appeal. For example, the Jaspers contend that Peggy Abrams should have been found liable under various theories. However, the Jaspers did not file a notice of cross-appeal or designate any issues on cross-appeal. Fed.R.Bankr.P. 8002(a) states that a cross-appealing party must file its notice of appeal within ten days of the filing date of the first notice of appeal. In the absence of a timely filed notice of cross-appeal, this panel does not have jurisdiction to address the issues raised by the Jaspers. In re Saunders, 31 F.3d 767 (9th Cir.1994); In re Maruko, Inc., 219 B.R. 567, 570 (S.D.Cal.1998).

A. Whether the Jaspers presented sufficient evidence to prove the damages and reliance elements of their section 523(a)(2)(B) claim.

Bankruptcy Code section 523(a)(2)(B) exempts from discharge any debt "to the extent obtained, by use of a statement in writing (i) that is materially false; (ii) respecting the debtor's or an insider's financial condition; (iii) on which the creditor to whom the debtor is liable ... reasonably relied; and (iv) that the debtor caused to be made or published with the intent to deceive."

Abrams asserts that the Jaspers presented insufficient evidence of damages and reliance and that the bankruptcy court's findings were erroneous as to those elements of a section 523(a)(2)(B) claim. This adversary proceeding was filed seven years and three months before the bankruptcy·court, after a trial spanning several years, issued its judgment. The bankruptcy court considered the task of analyzing all the evidence and testimony presented over the years to be a "herculean job." Yet the only piece of documentary or testimonial evidence provided to the panel as part of the excerpt of record is what appears to be a copy of the financial statements of Abrams and his colleagues, the Wassefs and Herbert and Lois Abrams—and it is not confirmed that even that document was entered into evidence.[4] The only transcript provided is that of the final hearing at which the bankruptcy court issued its findings of fact and (tentative) judgment. While both parties insert several references to "the record" in their briefs, each and every reference (except for those referring to the one transcript which was provided) is to the parties' own pleadings, such as closing argument briefs and oppositions to motions to dismiss.

Ninth Circuit BAP Rule 4(c) states that "[p]ursuant to Bankruptcy Rule 8009(b)(9), the excerpts of record shall include the transcripts necessary for adequate review in light of the standard of review to be applied to the

---

4. The parties stipulated to certain facts in their joint pretrial order entered July 27, 1992. However, none of the facts to which they agreed (such as the nature of the parties and entities involved in the proceeding) are germane to the damages and reliance issues in this matter. A list of the plaintiffs' exhibits was attached to the pretrial order; however, none of those exhibits are included in the excerpts of record submitted by Abrams or the Jaspers, and there is no indication in the record which, if any, of the exhibits listed were admitted into evidence.

issues before the panel. The panel is required to consider only those portions of the transcript included in the excerpts of record." The explanatory note to Rule 4(c) explains that "the subsection was added to address the problem created by appellants who challenge the factual findings of the bankruptcy court, but who do not include sufficient transcripts in the excerpts of record to allow the panel to properly review the bankruptcy court's decision for clear error. *In order to review a factual finding for clear error, the record must include the entire transcript and all other relevant evidence considered by the bankruptcy court. See In re Burkhart*, 84 B.R. 658 (9th Cir. BAP 1988)." (Emphasis added.)

■ "The appellants bear the responsibility to file an adequate record, and the burden of showing that the bankruptcy court's findings of fact are clearly erroneous." *In re Kritt*, 190 B.R. 382, 387 (9th Cir. BAP 1995). Abrams has not filed an adequate record, thereby rendering the panel incapable of determining the propriety of the bankruptcy court's findings. Hence, the bankruptcy court's findings of fact will stand.

### 1. Damages.

■ Abrams appears to argue that the bankruptcy court applied the wrong measure of damages. However, the bankruptcy court's statement that "the measure of damages under 523(a)(2) is not all damages that flow from the—or that were caused by the misrepresentation[,] but is limited to the property or credit obtained by the false representation" is accurate. *See, e.g., In re Russell*, 203 B.R. 303, 316 (Bankr.S.D.Cal. 1996). Therefore, the court's finding that the Jaspers suffered $1,977,000 in damages will not be disturbed. Abrams has failed to show that the evidence did not support such a finding.

### 2. Reliance.

Abrams also claims that the Jaspers "did not rely on Mr. Abrams['] financial statement but rather [on] an array of documentation before deciding who to develop his land with.... [The Jaspers] relied on the investigation of Mr. Abrams and his partners[']

financial strength[,] not his financial statement."

■ There is no requirement in section 523(a)(2)(B) that the financial statement be the *only* information relied upon by the creditor; in fact, such single-minded reliance, without further investigation, might in certain cases be ample grounds to find that a creditor's reliance was unreasonable. To prove actual reliance, the creditor "need only demonstrate that the false financial statements were a substantial factor in causing it to" extend financing. *In re Scarpinito*, 196 B.R. 257, 263 (Bankr.E.D.N.Y.1996).

■ The bankruptcy court specifically found that "the financial statement presented by Mark Abrams was a substantial factor in the decision by the Jaspers to invest their property in the project offered by Mark Abrams and ultimately put together...." The bankruptcy court's determination correctly applied the law and was well within its discretion.

### B. Whether Abrams was a fiduciary of Sea Palms Associates, Ltd. within the meaning of section 523(a)(4).

Abrams contends that he, as general partner of the general partner of Sea Palms, is not liable to Sea Palms under the fiduciary-fraud discharge exception of section 523(a)(4).

■ "Fiduciary" is a narrowly defined term in the bankruptcy context. "[T]he fiduciary relationship must be one arising from an express or technical trust that was imposed before and without reference to the wrongdoing that caused the debt." *In re Lewis*, 97 F.3d 1182, 1185 (9th Cir.1996). Although determination of a fiduciary relationship for section 523(a)(4) purposes is a question of federal law, this determination relies upon the existence of an express or technical trust pursuant to state law. *See Ragsdale v. Haller*, 780 F.2d 794 (9th Cir. 1986).

Abrams (with his wife Peggy) was the sole general partner of ABWA. In turn, ABWA

was the sole general partner of Sea Palms.[5] The bankruptcy court concluded that Abrams, as the general partner of the general partner of Sea Palms, was a fiduciary of Sea Palms and could be found liable to Sea Palms under section 523(a)(4). Abrams acknowledges that the Ninth Circuit, interpreting California law, has determined that a general partner owes a fiduciary duty to his or her partners. *Ragsdale*, 780 F.2d at 796–97. However, Abrams contends that his connection to Sea Palms is simply too attenuated for him to be the type of fiduciary contemplated by section 523(a)(4).

The *Ragsdale* court based its determination not on California partnership statutes but on state case law.[6] The court rejected an attempt to extract a § 523(a)(4) requirement from Cal.Corp.Code § 15021(1), which at that time read: [7]

> Every partner must account to the partnership for any benefit, and hold as trustee for it any profits derived by him without the consent of the other partners from any transaction connected with the formation, conduct, or liquidation of the partnership or from any use by him of its property.

The Ninth Circuit opined that "under [the California] statute, the trust arises only when the partner derives profits without consent of the partnership; it is the sort of trust *ex maleficio* not included within the purview of § 523(a)(4)." *Ragsdale*, 780 F.2d at 796.

The *Ragsdale* court instead turned to California common law to attach § 523(a)(4) fiduciary liability to partners: "California courts, however, have raised the duties of partners

beyond those required by the literal wording of § 15021. In California, '[p]artners are trustees for each other, and in all proceedings connected with the conduct of the partnership every partner is bound to act in the highest good faith to his copartner and may not obtain any advantage over him in the partnership affairs by the slightest misrepresentation, concealment, threat or adverse pressure of any kind.'" *Ragsdale*, 780 F.2d at 796 (quoting *Leff v. Gunter*, 33 Cal.3d 508, 514, 189 Cal.Rptr. 377, 381, 658 P.2d 740 (1983) (citations omitted)).

■ *Ragsdale* provides ample support for the proposition that ABWA, as general partner of Sea Palms, owed a fiduciary duty to Sea Palms (and the limited partners thereof).[8] Similarly, Abrams, as general partner of ABWA, owed a fiduciary duty to ABWA (and its limited partners). What is less clear is whether Abrams directly owed Sea Palms a fiduciary duty simply by virtue of the duties which flowed from Abrams to ABWA and from ABWA to Sea Palms.

The Fifth Circuit Court of Appeals addressed this "second-tier" general partner issue in *LSP Investment Partnership v. Bennett*, 989 F.2d 779 (5th Cir.1993). The partnership structure and purposes in *Bennett* were similar to those in this case: a limited partnership was organized to build and operate a Marriott hotel in Houston. That limited partnership, MG, had a sole general partner, "No. 20." In turn, No. 20 had a sole general partner, Archie Bennett. Bennett retained a company owned by Bennett to

---

**5.** Abrams' brief incorrectly asserts that "Sea Palms was a general partner of ABWA." The pretrial order's stipulated facts indicate that the reverse is true: "ABWA ... was the general partner of Sea Palms from the time of its formation until April 17, 1989."

**6.** The Ninth Circuit has been joined by the Fifth Circuit in holding that the "express or technical trust" required for section 523(a)(4) liability can arise from a state's common law. *LSP Investment Partnership v. Bennett*, 989 F.2d 779, 785 (5th Cir.1993); *see also Zohlman v. Zoldan*, 226 B.R. 767, 774 (S.D.N.Y.1998).

**7.** Cal.Corp.Code § 15021(1) was repealed effective January 1, 1999 and replaced with Cal.Corp. Code § 16404, which states in part that "A part-

ner's duty of loyalty to the partnership and the other partners includes ... [the duty to] account to the partnership and hold as trustee for it any property, profit, or benefit derived by the partner in the conduct and winding up of the partnership business or derived from a use by the partner of partnership property or information, including the appropriation of a partnership opportunity." Cal.Corp.Code § 16404(b)(1).

**8.** While *Ragsdale* concerned a relationship between general partners, it is clear that general partners owe the same fiduciary duties to limited partners that general partners owe to each other. *See, e.g., Lee v. Interinsurance Exch.*, 50 Cal. App.4th 694, 712, 57 Cal.Rptr.2d 798, 809 (1996); *Wyler v. Feuer*, 85 Cal.App.3d 392, 402, 149 Cal.Rptr. 626, 632 (1978).

"perform his duties as the general partner of No. 20 and, in turn, its duties as general partner of MG." *Bennett,* 989 F.2d at 782. Bennett's company would manage the project, and any cost savings which would accrue in the event the project was completed under budget would be paid directly to Bennett. However, Bennett, through No. 20, inappropriately charged various repair and equipment expenses to MG while paying himself a $1,000,000 distribution for "cost savings." The bankruptcy court and district court found that while No. 20 was a fiduciary within the meaning of section 523(a)(4), Bennett was not.

The Fifth Circuit, interpreting Texas partnership law, determined that a general or managing partner owes a section 523(a)(4) fiduciary duty to limited partners and, further, that the managing partner of the managing partner of a limited partnership was also a fiduciary for section 523(a)(4) purposes. The *Bennett* court cited *Crenshaw v. Swenson,* 611 S.W.2d 886 (Tex.Civ.App.1980), which stated that "[i]n a limited partnership, the general partner acting in complete control stands in the same fiduciary capacity to the limited partners as a trustee stands to the beneficiaries of the trust. . . . We must then, in deciding this case, do so under the laws applicable to trusts." *Crenshaw,* 611 S.W.2d at 890. *Crenshaw* dealt with "second-tier" issues similar to those in *Bennett* and this case.

The *Bennett* court believed the *Crenshaw* court placed particular importance on the nature of the business relationship as a whole and the control which the "second-tier" general partner imposed upon the entire enterprise:

> . . . Elizabeth Swenson [the second-tier general partner in *Crenshaw* ], in her various roles as general partner of the general partner, owner of the corporation hired to accomplish the construction project, and the real estate broker authorized to sell the properties when completed, exercised almost total control over the project. This high level of control, over the project and the limited partners' investments, appears to have been critical in persuading the

*Crenshaw* court that Ms. Swenson owed a fiduciary duty to the limited partners.

In reviewing the line of cases that gave rise to the rule in Texas that the managing partner of a partnership owes to his copartners the highest fiduciary obligations known at law, it is clear that the issue of control has always been the critical fact looked to by the courts in imposing this high level of responsibility.

*Bennett,* 989 F.2d at 789.

There is no California case directly on point addressing the "second-tier" issue. The closest analogy is found in *Commons v. Schine,* 35 Cal.App.3d 141, 110 Cal.Rptr. 606 (1973). The defendant in *Commons* was the sole shareholder of a corporation which acted as the sole general partner of a bankrupt limited partnership. The bankruptcy trustee filed suit in state court to recover funds paid by the partnership to the defendant on account of an antecedent debt. The *Commons* court determined that the defendant, as the "corporate controller-dominator," had a fiduciary relationship to the partnership's creditors when the partnership became insolvent. When the defendant paid himself instead of making funds available for creditors, "[a]s a fiduciary, he violated his duty to the beneficiaries of his trust." *Commons,* 35 Cal. App.3d at 144–45, 110 Cal.Rptr. at 608–09.

While *Commons* is inapposite because of its after-the-fact imposition of fiduciary liability upon the controlling shareholder, the case does emphasize the importance of control in establishing fiduciary duties under California law. "A fiduciary relation arises whenever confidence is reposed on one side, and domination and influence result on the other. . . ." *Eisenbaum v. Western Energy Resources, Inc.,* 218 Cal.App.3d 314, 322, 267 Cal.Rptr. 5, 9 (1990) (citations omitted). California limited partnership law specifically grants the general partner(s) exclusive control and management over partnership affairs; in turn, "the limited partner restricts his liability to the amount of his investment in return for surrender of any right to manage and control the partnership business." *Wyler v. Feuer,* 85 Cal.App.3d 392, 402, 149 Cal.Rptr. 626, 632 (1978); *see generally* Cal. Corp.Code §§ 15507 and 15509 (Uniform

Limited Partnership Act) and §§ 15632 and 15643 (California Revised Limited Partnership Act).

 Holding that second-tier general partners are not fiduciaries of first-tier limited partnerships would invite attempts to evade partnership duties and liability. A general partner-to-be could add a second partnership "layer" consisting of himself or herself and a phantom limited partner simply to insulate himself or herself from a potential nondischargeability determination while maintaining the same level of control. However, we need not make a general holding based on formal partnership structures, for we find the reasoning in *Bennett* persuasive and applicable under California law. Here, Abrams exercised a level of control similar to those exerted by the second-tier partners in the *Bennett* and *Crenshaw* cases.

Mark and Peggy Abrams, as the only general partners of the only general partner of Sea Palms, were the only individuals with managerial responsibility and control over the Sea Palms project. The project's general contractor was an entity controlled by Mark Abrams. Mark Abrams was the only individual who executed construction loan draws. Because of Abrams' high degree of control over Sea Palms, the panel affirms the bankruptcy court's holding that, for purposes of section 523(a)(4), Abrams was a fiduciary of Sea Palms.

**5. Conclusion.**

Abrams has failed to provide a record to support his contention that there was insufficient evidence for the bankruptcy court's findings that the damages and reliance elements of section 523(a)(2)(B) had been established. Further, the panel holds that under the facts here, Abrams, as the general partner of the general partner of the limited partnership, is a "fiduciary" for section 523(a)(4) purposes.

The bankruptcy court's decision is **AFFIRMED.**