*By order of the Bankruptcy Appellate Panel, the precedential effect
of this decision is limited to the case and parties pursuant to
6th Cir. BAP LBR 8013-1(b).  See also 6th Cir. BAP LBR 8010-1(c).*

**File Name:  06b0011n.06**

**BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| In re:   CAROL RAPISARDA SHANKER, | ) | |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| MARY ANN RABIN, TRUSTEE, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | No. 05-8085 |
| | ) | |
| v. | ) | |
| | ) | |
| CAROL RAPISARDA SHANKER, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| _____ | ) | |

Appeal from the United States Bankruptcy Court
for the Northern District of Ohio, Eastern Division, at Cleveland
No. 02-16621, Adv. Case No. 03-01301-PMC

Submitted on the Briefs: May 3, 2006

Decided and Filed:  June 5, 2006

Before: AUG, GREGG, and LATTA, Bankruptcy Appellate Panel Judges.

_____

**COUNSEL**

**ON BRIEF:**  Mary Ann Rabin, RABIN & RABIN, Cleveland, Ohio, George V. Pilat, Thomas M. Horwitz, McINTYRE, KAHN & KRUSE, Cleveland, Ohio, for Appellee.  Howard H. Shanker, Novelty, Ohio, pro se.

---

**OPINION**

---

J. VINCENT AUG, JR., Bankruptcy Appellate Panel Chief Judge. Pro Se[1] Appellant, Howard Shanker, the non-filing spouse of the debtor, Carol Rapisarda Shanker, appeals the Memorandum Of Opinion entered on November 2, 2005 ("Memorandum Opinion") by the bankruptcy court. The Memorandum Opinion determined that Appellees, George V. Pilat, Thomas M. Horwitz, and McIntyre, Kahn & Kruse Co., L.P.A. (collectively the "McIntyre Firm") hold a valid first mortgage (the "McIntyre Mortgage") on real estate located at 16903 Chillicothe Road, Chagrin Falls, Ohio (the "Real Estate"). Howard Shanker asserts that the bankruptcy court's factual findings on several issues are erroneous. Based on the discussion below and on the failure of Howard Shanker to provide an adequate record on appeal, we affirm the bankruptcy court's decision.

## I. ISSUES ON APPEAL[2]

Although the Appellant asserts multiple issues,[3] there are only two issues in this appeal relevant to deciding whether the McIntyre Mortgage is a valid first mortgage: (1) whether the bankruptcy court's factual finding that Carol Shanker's signature on the McIntyre Mortgage was not a forgery is clearly erroneous and (2) whether the bankruptcy court's factual finding that Howard Shanker was not fraudulently induced to execute the McIntyre Mortgage was clearly erroneous.

---

[1]The bankruptcy court's opinion indicates that Howard Shanker is a law school graduate who is not admitted to the bar.

[2]On April 26, 2006, the Appellees, through counsel, filed a motion to dismiss the appeal as moot. The Appellees contend that the Appellant failed to obtain a stay pending this appeal and that the Real Estate has been sold pursuant to an order entered by the bankruptcy court. A copy of the bankruptcy court's order is attached to the motion. We find, however, that the appeal is not moot because the issue of the validity of the McIntyre Mortgage directly affects how the proceeds from the sale of the Real Estate should be disbursed.

[3]*See infra* Part **IV. DISCUSSION**, *Additional Issues Raised By Appellant But Not Properly Before The Panel*.

## II. JURISDICTION AND STANDARD OF REVIEW

The Bankruptcy Appellate Panel ("BAP") has jurisdiction to hear and decide this appeal. The United States District Court for the Northern District of Ohio has authorized appeals to the BAP. A final order of a bankruptcy court may be appealed by right under 28 U.S.C. § 158(a)(1). An order by a bankruptcy court determining the validity of a lien is a final order for purposes of 28 U.S.C. § 158(a)(1). *See* 28 U.S.C. § 157(b)(2)(K).

In *Spragin v. Nowak (In re Nowak)*, 330 B.R. 880 (unpublished table decision), No. 03-8051, 2005 WL 2240974, at *1 (B.A.P. 6th Cir. Sept. 16, 2005), Judge Latta succinctly set forth the Standard of Review for the Panel to use in reviewing a bankruptcy court's order regarding the validity of a lien.

> The Panel must "'affirm the underlying factual determinations unless they are clearly erroneous.'" *Bailey v. Bailey* (*In re Bailey*), 254 B.R. 901, 903 (B.A.P. 6th Cir. 2000) (quoting *National City Bank v. Plechaty* (*In re Plechaty*), 213 B.R. 119, 121 (B.A.P. 6th Cir. 1997)). A factual determination is clearly erroneous "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Bailey*, 254 B.R. at 903 (citations omitted).
>
> The Panel reviews conclusions of law de novo. "De novo review requires the Panel to review questions of law independent of the bankruptcy court's determination." *First Union Mortgage Corp. v. Eubanks* (*In re Eubanks*), 219 B.R. 468, 469 (B.A.P. 6th Cir. 1998) (citations omitted).

The Rules of Bankruptcy Procedure further provide that the reviewing court must give "due regard . . . to the opportunity of the bankruptcy court to judge the credibility of the witnesses." Fed. R. Bankr. P. 8013.

## III. FACTS

The Panel is at a great disadvantage in this appeal because of Howard Shanker's failure to include in the Appellant's "Joint" Appendix any relevant exhibits presented at the trial other than a copy of the McIntyre Mortgage.[4] The appendix does not contain any portion of the transcript of

---

[4]It is not clear that the mortgage included in the appendix is the one admitted into the record at trial since that copy does not contain all the notations discussed by the bankruptcy court in the

the two-day hearing. Nor does it contain the dockets from either the bankruptcy case or the adversary proceeding. Appellees included the Memorandum Opinion and the Appellant's Notice of Appeal as exhibits to Appellees' brief. Otherwise, the Panel would not even have those documents to review. The only place for the Panel to obtain an unbiased version of the facts is from the bankruptcy court's Memorandum Opinion. Thus it is extremely difficult to conclude that the bankruptcy court made a clearly erroneous finding of fact.

Mary Ann Rabin ("Ms. Rabin" or the "Chapter 7 Trustee"), is the trustee in Carol Shanker's chapter 7 bankruptcy case. All parties agree that, at the time Carol Shanker filed her chapter 7 petition, the Real Estate that is owned solely by Carol Shanker became property of the bankruptcy estate. Carol Shanker has not joined in this appeal. Howard Shanker's interest in the Real Estate is merely any dower interest he may have by virtue of his marriage to Carol Shanker.

The facts stated below are taken (sometimes copied verbatim) from the bankruptcy court's Memorandum Opinion.

As the Chapter 7 Trustee, Ms. Rabin filed an adversary complaint against Carol Shanker and various other parties (not including Howard Shanker) to determine the validity, extent and priority of the liens on the Real Estate with the intention to sell the Real Estate for the benefit of creditors. A default judgment was obtained against several of the parties and the remaining parties, other than Carol Shanker, entered into an agreed order providing that the Real Estate would be sold and that the McIntyre Mortgage along with the liens of several other creditors would be transferred to the sale proceeds. Although the agreed order did not resolve the issues relating to Carol Shanker, the adversary proceeding was closed.

Subsequently, Ms. Rabin reopened the adversary complaint to resolve the issues with Carol Shanker and to amend the complaint to add Howard Shanker as a defendant based on his possible dower interest in the property. In the adversary proceeding, Carol Shanker agreed that the Chapter 7 Trustee had the right to sell the Real Estate but denied the validity of the McIntyre Mortgage because she asserts that her signature on the mortgage is a forgery. Howard Shanker asserts that the mortgage is not valid as to him because he was fraudulently induced to sign the mortgage.

Memorandum Opinion. *See infra* note 6 and accompanying text.

"This dispute arises out of an attorney-client relationship gone sour." (Memorandum Opinion at 1.) The Memorandum Opinion describes the various real estate transactions entered into by Carol and/or Howard Shanker and affiliated entities. In outlining the transactions, the court stated that it relied primarily on the exhibits and secondarily on the testimony of the parties, because the parties' testimony was often confusing as to which activity or ownership interest was being discussed. Other than a mortgage assigned to affiliates of Mr. Shanker and referred to as the L&M Mortgage, Mr. Shanker does not argue that another mortgage or lien has priority over the McIntyre Mortgage. According to Mr. Shanker, the bankruptcy court should have equitably subordinated the McIntyre Mortgage to the L&M Mortgage due to the alleged malpractice and fraudulent conduct on the part of individuals at the McIntyre Firm. As Mr. Shanker asserts in his brief, if subordination occurs, he will hold the first mortgage on the Real Estate.

On its face, the McIntyre Mortgage was properly executed. The mortgage reflects that on April 7, 1994, Carol and Howard Shanker executed the mortgage to the McIntyre Firm providing the Real Estate as security for the payment of the firm's legal fees owed by Carol and/or Howard Shanker and certain business entities in which Howard Shanker was involved. The mortgage is also signed by Scott Kahn on behalf of the McIntyre Firm. The signatures of the Shankers and Scott Kahn were witnessed by Jeannette Kahn and Lee Kahn, the parents of Scott Kahn, and the mortgage was notarized by Jeannette Kahn. The signing of the mortgage took place at the home of Scott Kahn, because it was conveniently located for Carol Shanker. Further, the parties were comfortable meeting at Scott Kahn's residence because they were friends and had done business together and socialized together in the past. The mortgage was recorded on April 8, 1994, in the Recorder's Office of Geauga County, Ohio, at volume 977, page 749.

The testimony of witnesses for the McIntyre Firm is that both of the Shankers signed the mortgage in front of the witnesses and the notary. The next day, Scott Kahn made a copy of the mortgage and gave it to Howard Shanker to file, requesting that Howard Shanker return a stamp filed copy to the McIntyre Firm, which he did. That copy was placed in the firm's files. It was only years later that there was any dispute that the mortgage was not properly executed by the Shankers.

The testimony of the Shankers is that Howard Shanker signed the mortgage the night of April 7, 1994, but not in the presence of the witnesses or the notary. Howard Shanker further stated

that he signed the mortgage only because he was fraudulently induced to do so by Scott Kahn telling Howard Shanker that the mortgage would be a liability shield and would be a second mortgage behind the L&M mortgage. Carol Shanker did not sign the mortgage and stormed out of the house. Scott Kahn then allegedly forged Carol Shanker's signature and recorded the mortgage with the Geauga County recorder. Howard Shanker asserts he never saw the original mortgage again.

After considering the evidence, the bankruptcy court found that the events took place essentially as presented by the McIntyre Firm and as supported by Ms. Rabin. It found that both Carol and Howard Shanker were present at Scott Kahn's residence and that they both signed in the presence of the witnesses and the notary.

With respect to the recording of the mortgage, the bankruptcy court found that Howard Shanker picked up the original and a copy of the mortgage from Scott Kahn and delivered it to the Geauga County recorder for filing. In part, the court based this finding on the evidence presented that the clerk in the recorder's office found the witnesses' signatures illegible and as is standard practice, asked Howard Shanker to print the names of the witnesses under their signatures. The bankruptcy court noted that the name of Jeannette Kahn was misspelled as "Jeannett" and that Lee Kahn was written as "Ted Kahn." The bankruptcy court cogently reasoned that certainly Scott Kahn would have known how to spell his mother's name and that his father's name was Lee and not Ted.

Further, after recording the mortgage, it is standard practice for the clerk to mail the original in a self-addressed envelope provided by the filer. The bankruptcy court found that the notations on the mortgage "AE [addressed envelope to] Howard Shanker" demonstrate that the mortgage was mailed to Howard Shanker. The court specifically found that "[o]n April 12, 1994, the recorder's office mailed the original mortgage back to Howard Shanker at 13610 Sperry Road, Novelty, Ohio."[5] (Memorandum Opinion at 15.) Presumably, since the original mortgage was never located, it was never presented to the bankruptcy court. We are not informed where the copy relied on by the bankruptcy court came from or which party entered it as an exhibit at trial.[6]

---

[5]This evidence was apparently provided by Ms. Rabin in the form of a notation in the Geauga County Daily Register of Mortgages to be Recorded that noted the actual date the mortgage was mailed back to Howard Shanker's Sperry Road address.

[6]It is the notations on the McIntyre Mortgage where the names of Jeannette and Lee Kahn are hand printed and the notation regarding the mailing to Shanker after recording that do not appear

Essentially, the bankruptcy court stated in its Memorandum Opinion that it did not find Carol or Howard Shanker to be credible witnesses. In addition to the conflicts noted above, the bankruptcy court pointed out the following evidence on which it based its conclusion that the Shankers were not credible.

Carol Shanker testified that she would never have signed the mortgage because she always kept her business dealings separate from her husband's. She had, however, in 1988 participated in his business dealings relating to the Virgil Brown building not just in her role as a trustee of the Michael Shanker Trust, but individually. She also testified in deposition that she did not recall if she was at Scott Kahn's house the night of April 7, 1994. At trial, she changed her story to be that she was definitely there, but she didn't sign any documents. She did not explain adequately why she couldn't recall such a significant event on June 1, 2005 at deposition yet she clearly recalled it at the October 2005 trial. Her explanation for the discrepancy was that she did not feel well at the time of the deposition, but there is nothing in the lengthy deposition transcript to support this. The court finds that this inconsistency regarding the critical event in this case casts considerable doubt on Carol Shanker's credibility. Additionally, Carol Shanker testified that she would not have signed the mortgage because she had already paid $100,000.00 for an assignment of the L&M mortgage and judgment to prevent a foreclosure on the [Real Estate]. That assignment did not, however, take place until March 10, 1995, almost a year later, and so could not have been a legitimate reason why Carol Shanker would not have signed the mortgage on April 7, 1994. When faced with this inconsistency on cross-examination, Carol Shanker did not have much of a response. An additional example of testimony that leads the court to question Carol Shanker's credibility related to the Personal Guarantee signed by Carol Shanker in which she guaranteed all sums owed to the firm by Howard Shanker, . . . . On direct examination, she looked at a copy of the document and testified that her signature appears on it but she did not sign it. From this, she concluded that either Scott Kahn or Robert Kracht must have forged her signature by cutting her signature from a genuine document they had in their office, pasting it on to the guarantee, and then photocopying the cut-and-paste version. On cross-examination, the firm continued her examination by producing the original guarantee. The original shows unequivocally that the signature was placed directly on the document and was in no way cut or pasted from another document. Carol Shanker had no satisfactory response to this evidence. These points all lead the court to conclude that Carol Shanker did not prove that she did not sign the mortgage.

(Memorandum Opinion at 15-16.)

---

on the copy of the mortgage provided by Howard Shanker in the appendix in this appeal. Neither party provided information to clarify this discrepancy. Obviously, the mortgage that Howard Shanker included in the appendix is more favorable to his position without the added notations upon which the bankruptcy court relied in makings its findings of fact.

The bankruptcy court further found that the expert witness, Philip Bouffard, presented by the McIntyre Firm, was more convincing than was the handwriting expert, Mary Kelly, presented by the Shankers. Dr. Bouffard testified that in his opinion, Carol Shanker's signature on the mortgage was authentic. Specifically, the bankruptcy court found that Dr. Bouffard had a long and distinguished career as a forensic document examiner and that he had compared Carol Shanker's signature on the McIntyre Mortgage to multiple signatures of Carol Shanker that already existed. Dr. Bouffard concluded, to a reasonable degree of certainty, that Carol Shanker had signed the McIntyre Mortgage. While the bankruptcy court recognized that both experts were deserving of respect, it found that Ms. Kelly's testimony was entitled to little weight. The court's reasoning was that Ms. Kelly had primarily relied on dictated signatures provided for the purposes of trial rather than existing signatures from papers signed when the genuineness of Carol Shanker's signature was not at issue. Although Ms. Kelly requested contemporaneous, non-dictated exemplars from Carol Shanker's lawyer, she never received those exemplars. The failure of Carol Shanker and/or her attorney to cooperate with their own witness raises a question regarding the good faith of the Shankers in their effort to find an expert witness who would support their position. In the end, Ms. Kelly could give only a qualified opinion that there were "some indications" that the signature on the McIntyre Mortgage might not be Carol Shanker's.

The bankruptcy court further found that Howard Shanker was not a credible witness based on his testimony surrounding the recording of the McIntyre Mortgage in which both he and Carol Shanker claimed that Scott Kahn recorded the mortgage and had the original. The Shankers asserted that Scott Kahn refused to produce the original mortgage when requested because it would prove that Carol Shanker's signature was a forgery. The court found, however, that the trial documents, as reflected above, and the testimony of the clerk of the recorder's office, a disinterested third party, clearly support the conclusion that Howard Shanker delivered the mortgage for recording and that the original recorded mortgage was returned to Howard Shanker. In addition, Howard Shanker also changed his testimony on whether Jeannette and Lee Kahn were present at the signing of the mortgage, at one time indicating that he did not see them there and later saying that they may have been present.

The bankruptcy court recognized that there were some considerations which did not support the McIntyre Firm's version of events such as the potential for relationship bias between Scott Kahn

and his parents serving as the witnesses and notary with respect to the McIntyre Mortgage. However, the bankruptcy court found the testimony of both Jeannette and Lee Kahn to be entirely credible. Jeannette Kahn also recognized Howard Shanker at the trial but did not recognize Carol Shanker. Carol Shanker acknowledged, however, that her appearance had changed since 1994 due to different hair color, hair length and cosmetic surgery.

Finally, the bankruptcy court also found that Howard Shanker had not proven his assertion that he was fraudulently induced into signing the McIntyre Mortgage. In this respect, the court stated:

> [Howard Shanker] alleges that he would not have signed the mortgage but for Scott Kahn's statements that the mortgage would be a "liability shield" and would be a second mortgage behind the L&M mortgage. The court finds, based on the credibility of the witnesses, that the conversation was otherwise. Scott Kahn told Howard Shanker that his firm wanted the mortgage so that Huntington[7] would not stand ahead of the firm if it got a judgment against Carol Shanker on the $600,000.00 note and placed a judgment lien on the [Real Estate]. Kahn also assured Shanker that the firm would not initiate foreclosure proceedings based on the mortgage, but wanted to be protected if another lien holder did so. There was no evidence that these statements were not true when made and history proved that the firm did not, in fact, initiate foreclosure proceedings. Moreover even if Scott Kahn told Howard Shanker that the McIntyre mortgage would be second behind the L&M mortgage, that statement was true when it was made. Howard Shanker did not, therefore, prove that he was fraudulently induced to sign the mortgage.

(Memorandum Opinion at 19.)

Based on these findings, the bankruptcy court determined that the McIntyre Mortgage was a valid first mortgage on the Real Estate. Howard Shanker filed a timely Notice of Appeal as to the "order entered in this adversary proceeding on the 2 day of November 2005."

---

[7]Huntington was another creditor of the Shankers that held a $600,000 note signed by the Shankers and secured by a mortgage. It was unclear what real estate secured the mortgage. However, Huntington had obtained a judgment lien against Howard Shanker and had started foreclosure procedures on real estate owned solely by Howard Shanker. At the time the McIntyre Mortgage was executed and recorded, Huntington had not yet obtained a judgment against Carol Shanker.

## IV. DISCUSSION

*Bankruptcy Court's Statement Of The Law As To Validity Of The McIntyre Mortgage.*

The Panel reviews conclusions of law de novo. *First Union Mortgage Corp. v. Eubanks* (*In re Eubanks*), 219 B.R. 468, 469 (B.A.P. 6th Cir. 1998). The bankruptcy court's statement of the applicable law was that,

> The law that applies here is the law in effect in 1994 when the McIntyre firm's mortgage was executed. At that time, a mortgage had to meet three major tests to be considered properly executed: (1) the mortgagor had to sign the mortgage; (2) two witnesses had to attest to the mortgagor's signature; and (3) a notary public (or other designated official) had to certify or acknowledge the mortgagor's signature. *See* Ohio Rev. Code § 5301.01. A facially valid mortgage bears a strong presumption of validity. *See Simon v. Chase Manhattan Bank (In re Zaptocky)*, 250 F.3d 1020, 1025 (6th Cir. 2001) (discussing Ohio law).

> Even if a mortgage is defectively executed, it is still generally valid as between the parties to it. The reasoning behind such a rule is to bind the parties to that which they intended. However, where a mortgagor can show that the mortgage is a forgery, or was executed as a result of fraud, the mortgage is ineffective and does not convey an interest in the property. The party claiming fraud must prove it by clear and convincing evidence. In weighing the evidence on this issue, a notary's certificate of acknowledgment is entitled to great weight as to the facts stated in it. A notary's certificate can, however, be impeached by a mortgagor based on sufficient proof of fraud involving the mortgagee and the notary, or forgery.

> The elements of fraud and fraudulent inducement with respect to the granting of a mortgage are: (1) a representation or, where there is a duty to disclose, the concealment of a fact; (2) the representation is material to the transaction; (3) the representation is made falsely with knowledge that it is false, or with disregard and recklessness as to whether it is true; (4) an intent to mislead another into relying on the representations; (5) justifiable reliance; and (6) resulting injury caused by the reliance.

(Memorandum Opinion at 5-6 (internal quotations and some citations omitted).)

The bankruptcy court correctly stated the law that is relevant in this appeal.

*Duty Of Appellant To Present Record On Appeal.*

As noted above, the issues in this appeal are whether the bankruptcy court erred in finding that Carol Shanker's signature was not forged and that Howard Shanker was not fraudulently induced into signing the McIntyre Mortgage. Obviously, these issues are very fact specific, but

Howard Shanker failed to provide the Panel with any part of the transcript of the hearing or the majority of the relevant exhibits from which the Panel could effectively review the findings of fact made by the bankruptcy court. Further, it is questionable whether the one exhibit that he did provide, the McIntyre Mortgage, is the correct or complete exhibit.

"'It is the duty of the appellant to bring up sufficient portions of the record to affirmatively show the error claimed.'" *R.D.F. Devs., Inc. v. Sysco Corp. (In re R.D.F. Devs., Inc.)*, 239 B.R. 336, 339-40 (B.A.P. 6th Cir. 1999) (quoting *Hawke v. Servicised Prods. Corp*, 95 F.2d 710 (6th Cir. 1938) *cert. denied*, 306 U.S. 650, 59 S. Ct. 592 (1939)). Where the appellants fail to provide an adequate record, the reviewing court is entitled to presume that missing portions are not favorable to the appellants. *See Price v. Lehtinen (In re Lehtinen)*, 332 B.R. 404, 416 (B.A.P. 9th Cir. 2005). *See also Abrams v. Sea Palms Assocs., Ltd. (In re Abrams)*, 229 B.R. 784, 788-89 (B.A.P. 9th Cir. 1999) (appellants bear the burden of filing an adequate record to show that the bankruptcy court's findings of fact are clearly erroneous and where they fail to do so, the bankruptcy court's findings of fact will stand). Factual statements in Howard Shanker's brief are not a part of the record before the Panel. *R.D.F. Devs., Inc.*, 239 B.R. at 340.

Even if the Panel makes reasonable allowance for Howard Shanker's pro se status and liberally construes the documents he filed on appeal, *Ozenne v. Bendon (In re Ozenne)*, 337 B.R. 214, 218 (B.A.P. 9th Cir. 2006), we find that the record lacks any evidence to support his arguments.

In this case and on the record provided, it is not difficult to give "due regard . . . to the opportunity of the bankruptcy court to judge the credibility of the witnesses." Fed. R. Bankr. P. 8013. The bankruptcy court had the benefit of hearing the witnesses' testimony and viewing the witnesses' demeanor, tone, attitude, body language and expressions, a benefit which this Panel does not have. In the absence of a transcript, not only does the Panel not have this same opportunity, but the Panel does not even have the benefit of reading the testimony.

The bankruptcy court's finding that the Shankers were not credible witnesses is supported by the very limited record available for review. Therefore, the bankruptcy court's finding that Carol Shanker's signature on the McIntyre Mortgage was not forged and the finding that Howard Shanker's signature was not obtained by fraud are well supported by the facts and reasoning stated in the Memorandum Opinion and summarized above. We find nothing clearly erroneous in the

bankruptcy court's findings of fact and conclusions of law. As to whether the McIntyre Mortgage was a first mortgage, the Panel has absolutely nothing before it to enable it to review that finding. Therefore, this finding of fact is also not clearly erroneous and will also "stand." *See Abrams*, 229 at 789.

*Additional Issues Raised By Appellant But Not Properly Before The Panel.*

In his brief, Howard Shanker asserts multiple other issues: (1) that drafting errors were held against him, the pro se defendant, when the McIntyre Firm was the party that drafted the McIntyre Mortgage; (2) that the McIntyre Firm violated certain disciplinary rules of the Code of Professional Responsibility; (3) that the McIntyre Firm violated certain canons of ethics; (4) that he was not allowed to present Regulation Z claims in his case; (5) that he, as a pro se litigant, was held to the standards of an attorney;[8] (6) that certain of his malpractice claims against the McIntyre Firm were not allowed to be heard in the adversary proceeding; (7) that none of his counterclaims were heard in this adversary proceeding; and (8) that the McIntyre Mortgage has no value without a promissory note.

All of these issues, except (8), were addressed in the bankruptcy court's Memorandum Opinion on Motion for Summary Judgment dated August 16, 2005 ("Summary Judgment Opinion"), and attached as Exhibit C to the appendix. The Summary Judgment Opinion denied the McIntyre Firm's motion for summary judgment against the Shankers in regard to the validity and priority of the McIntyre Mortgage. It also advised the parties that they would not be allowed to continue to argue facts and issues that were irrelevant to the adversary proceeding. On page 4 and 5 of that opinion, the bankruptcy court provided specific instructions to the parties for trial including advising the parties that the following facts and issues, among others, were irrelevant to the adversary proceeding: (i) alleged professional conflicts of interest on the part of the firm; (ii) the amount of legal fees paid to the firm and/or still owed; (iii) the quality of legal work performed by the firm relating to Cuyahoga County; and (iv) any alleged violations of Regulation Z. In addition, the court stated that "[f]rom this point in this case forward, Howard Shanker, who has chosen to represent himself, will be held to the same standard as represented parties." (Summary Judgment Opinion at

---

[8]*Badalyan v. Holub (In re Badalyan)*, 236 B.R. 633, 637 (B.A.P. 6th Cir. 1999) (judge did not abuse her discretion in advising pro se debtor in nonhostile or noncritical manner that he would be held to the same standard of practice as debtors who are represented by counsel).

5.)  As noted above, these are the very issues that Howard Shanker attempts to appeal before this Panel.

Presumably, Howard Shanker's statement of issues (1) through (7) above were not at issue in the trial of this matter and none of those issues were addressed in the Memorandum Opinion of the bankruptcy court that is on appeal before the Panel.  While Howard Shanker could have appealed these matters as part of this appeal if he had also appealed the Summary Judgment Opinion, his Notice of Appeal is limited to an appeal of the Memorandum Opinion.[9]  The current Notice of Appeal very succinctly provides that Howard Shanker appeals from the order "entered in this adversary proceeding on the 2 day of November 2005."  Had Howard Shanker provided a complete copy of the record, it would have been possible to determine if these issues were raised at the trial. Therefore, as to these matters, Howard Shankers' time to appeal has expired and the Panel does not have jurisdiction over these possible issues.

In addition, with respect to issue (8) above regarding the value of a mortgage without a promissory note, from the record provided, it does not appear that this issue was raised in the bankruptcy court.  The Panel should not review that argument for the first time on appeal.  *R.D.F. Devs., Inc.*, 239 B.R. at 340 ("Appellate courts ordinarily do not consider issues raised for the first time on appeal and an argument is waived that is not first presented to the bankruptcy court.") (citations and internal quotations omitted).

In any event, even if we were to decide that, due to Howard Shanker's pro se status, the Notice of Appeal should be read to also include the issues in the August 16, 2005, Summary Judgment Opinion and Howard Shanker's issue (8) regarding the necessity of a promissory note, Howard Shanker failed to provide a record upon which the Panel could provide a meaningful review.

---

[9]The Summary Judgment Opinion, however, was not a final, appealable judgment and the appeal time had not started to run when that opinion was entered.  "Generally, an order denying a motion for summary judgment is not a final order because it does not end the litigation on the merits." *Klingshirn v. United States (In re Klingshirn)*, 209 B.R. 698, 700 n.1 (B.A.P. 6th Cir. 1997) (internal quotations and citations omitted).  The Summary Judgment Opinion did not end the litigation in the bankruptcy court but rather set out parameters the court expected the parties to abide by during the trial.

## V. CONCLUSION

We have essentially nothing before us for review except the Memorandum Opinion, which upon its face discloses no error. In such a case, the presumption prevails and we find that the bankruptcy court acted properly in the exercise of its judicial discretion and upon lawful grounds. *Hawke*, 95 F.2d at 710-11.

The Memorandum Opinion entered by the bankruptcy court is AFFIRMED.