Filed 12/18/17

CERTIFIED FOR PUBLICATION


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| YUBA CITY UNIFIED SCHOOL DISTRICT, | C082934 |
| Plaintiff and Respondent, | (Super. Ct. No. PT151241) |
| v. | |
| CALIFORNIA STATE TEACHERS' RETIREMENT SYSTEM, | |
| Defendant and Appellant. | |


APPEAL from a judgment of the Superior Court of Yolo County, Timothy L. Fall, Judge. Reversed with directions.

Sheppard, Mullin, Richter & Hampton, Raymond C. Marshall and Robert J. Stumpf, Jr., for Defendant and Appellant.

Kingsley Bogard, Lindsay K. Moore and Ethan Retan for Plaintiff and Respondent.


1

The California State Teachers' Retirement System (CalSTRS) appeals from a decision granting the Yuba City Unified School District's (District) petition for writ of mandate and setting aside CalSTRS's decision to collect overpayments mistakenly made to some of the District's retirees. The superior court held that the three-year statute of limitations set forth in Education Code section 22008, subdivision (c) bars collection of the overpayments because a 2005 letter CalSTRS sent one of the retirees demonstrated actual notice of the payment issues.[1] We disagree. The letter does not reflect actual notice of the specific payment issues raised in this proceeding. We conclude, however, that *inquiry* notice would be sufficient to start the limitation period contained in section 22008, subdivision (c). Whether CalSTRS had inquiry notice in this case is a question of fact that was not addressed at the administrative level or by the superior court. We will reverse and remand for further proceedings in light of these conclusions.

## I. BACKGROUND

"[Cal]STRS is the state agency responsible for managing contributions made by employees and member school districts to the State Teachers' Retirement Fund." (*O'Connor v. State Teachers' Retirement System* (1996) 43 Cal.App.4th 1610, 1614.) As relevant here, CalSTRS is charged with determining "the appropriate crediting of contributions between the Defined Benefit Program and the Defined Benefit Supplement Program." (§ 22119.2, subd. (f).) CalSTRS is administered by the Teachers' Retirement Board (Board). (§ 22200, subd. (a).) The Board may audit the records of a public agency (§ 22206) and require the county superintendent or any employing agency to provide pertinent information regarding members (§ 22455).

Pursuant to this authority, CalSTRS conducted an audit of the District that covered members retiring between the 2002-03 and 2011-12 school years. In 2012, CalSTRS

---

[1] Undesignated statutory references are to the Education Code.

issued an audit report that found the District had incorrectly reported certain one-time payments as creditable to the Defined Benefit Program instead of the Defined Benefit Supplement Program for members who retired between the 2002-03 and 2008-09 school years. The types of District payments at issue were: (1) payments of $1,750 upon retirement and (2) payments of 25 percent of the member's last year's base salary. These reporting errors caused 54 members' final compensation to be overstated and resulted in an overpayment to each of these retirees of between $12 and $992 per month. The report outlined the need for the District to make corrections and explained that CalSTRS would collect the overpayments pursuant to sections 24616 and 24617. Because the overpayments were based on erroneous information from the District, CalSTRS would also seek payment from the District for the difference between the overpayments and the amount CalSTRS projected it could collect from the members. (§ 24616.5.)

The District and 47 of the retirees requested an appeal of the final audit.[2] They also moved to dismiss based on the statute of limitations set forth in section 22008. The motion was based on a letter CalSTRS sent to one of the retirees, Lavaune Bell, on October 15, 2005, after she withdrew $100,000 from her account. The letter explains that Bell's monthly benefit would be changed as the result of either "additional employer reporting or an internal correction to [her] account." Further, CalSTRS would deduct 5 percent from her monthly benefit until the overpayment was repaid. The letter was signed, "Service Retirement."

A hearing on the District's appeal and motion to dismiss was held before an administrative law judge (ALJ) in December 2014. After the hearing, the ALJ issued a proposed decision denying the appeal and the motion to dismiss. The ALJ found that the

---

[2] One of the retirees died during the course of the proceedings.

$1,750 payment was paid to all of the relevant retirees upon retirement, but the 25 percent payment was only at issue for one retiree, Daniel Kohl.

The District no longer contests the merits of CalSTRS's audit findings, and we focus our summary of the ALJ's proposed decision on her ruling on the motion to dismiss. The ALJ explained that the three-year statute of limitations set forth in section 22008, subdivision (c) began to run on the date the incorrect payment was discovered. The ALJ summarized the testimony of a CalSTRS Pension Program Manager who explained that he believed the Sutter County Office of Education was responsible for initiating the recalculation,[3] and CalSTRS did not audit Bell's account until 2012. The ALJ quoted from the manager's declaration: " 'Employers submit earnings and contribution data through an automated system to CalSTRS. The majority of employers report their data directly to the county office of education, which is then reported to the CalSTRS system via a direct reporting portal . . . . Information is then automatically processed by the CalSTRS system for calculating a benefit. As a result, CalSTRS does not know the nature of the service performed based upon the reporting; only the compensation paid, the compensation earnable (full-time equivalent), and the associated contributions. Unless there is a manual review, such as an audit, of the collective bargaining agreement or employment contract associated with the individual reporting lines, CalSTRS cannot verify the nature of the service performed.' " Moreover, if an employer provides additional reporting or if an account is corrected, " 'the system utilized by CalSTRS will create an automatic computer-generated letter.' "

The parties agreed that the benefit recalculation set forth in the 2005 letter to Bell only excluded her 25 percent payment but continued to reflect the $1,750 payment. The ALJ found "there was not adequate evidence to conclude that the October 15, 2005[,]

---

[3] Both the District and CalSTRS denied responsibility for the recalculation.

4

letter to respondent Bell demonstrated that CalSTRS, in 2005, was made sufficiently aware of the District's coding of the 25[ percent] and $1,750 payments to the [Defined Benefit] Program to put CalSTRS on notice that it needed to take prompt action relating to all the teacher respondents. On its face, the October 15, 2005[,] letter did not explicitly refer to either the 25[ percent] payment or the $1,750 payment. It is not clear from that letter who may have inputted the information into the CalSTRS system that resulted in the recalculation of respondent Bell's monthly retirement benefit. Consequently, the evidence did not establish that when respondent Bell's monthly retirement benefit was recalculated in 2005, CalSTRS was aware of the general coding issues surrounding the 25[ percent] and $1,750 payments to trigger the running of the limitations period."

CalSTRS adopted the ALJ's proposed decision as its decision on July 9, 2015. The District filed a petition for a writ of administrative mandate pursuant to Code of Civil Procedure section 1094.5 seeking to set aside CalSTRS's decision.

On June 17, 2016, the superior court issued a statement of decision. It explained that it "adopts the Administrative Law Judge's finding of fact, but not the conclusions of law. Whether the 2005 letter constitutes actual or inquiry notice is a conclusion of law. [¶] The 2005 letter from [CalSTRS] to [Bell] constitutes actual notice to [CalSTRS] of the payment issues. [CalSTRS]'s actions to seek repayment or otherwise adjust the alleged overpayments are therefore untimely and must cease."

On July 27, 2016, the superior court issued a peremptory writ of mandamus and entered judgment accordingly.

On September 6, 2016, CalSTRS appealed.

## II. DISCUSSION

A. *Standard of Review*

Because CalSTRS's administrative decision to seek repayment substantially affects the retirees' fundamental vested right in the State Teachers' Retirement Fund to the amount to which they are entitled by law, the independent judgment standard of

5

review applies.  (*Hughes v. Board of Architectural Examiners* (1998) 17 Cal.4th 763, 789; *O'Connor v. State Teachers' Retirement System, supra,* 43 Cal.App.4th at p. 1620.)  Under this standard, "a trial court must afford a strong presumption of correctness concerning the administrative findings, and the party challenging the administrative decision bears the burden of convincing the court that the administrative findings are contrary to the weight of the evidence."  (*Fukuda v. City of Angels* (1999) 20 Cal.4th 805, 817.)  "[T]he standard of review on appeal of the trial court's determination is the substantial evidence test."  (*Id*. at p. 824.)  Additionally, "we are not bound by any legal interpretations made by the administrative agency or the trial court; rather, we make an independent review of any questions of law."  (*Rand v. Board of Psychology* (2012) 206 Cal.App.4th 565, 575.)

B.      *Statute of Limitations*

Section 22008 sets forth the statute of limitations "[f]or the purposes of payments into or out of the retirement fund for adjustments of errors or omissions with respect to the Defined Benefit Program or the Defined Benefit Supplement Program . . . :

"(a) No action may be commenced by or against . . . the system . . . more than three years after all obligations to or on behalf of the member . . . have been discharged.

"(b) If the system makes an error that results in incorrect payment to a member . . . , the system's right to commence recovery shall expire three years from the date the incorrect payment was made.

"(c) If an incorrect payment is made due to lack of information or inaccurate information regarding the eligibility of a member . . . to receive benefits under the Defined Benefit Program or Defined Benefit Supplement Program, the period of limitation shall commence with the discovery of the incorrect payment.

"(d) Notwithstanding any other provision of this section, if an incorrect payment has been made on the basis of fraud or intentional misrepresentation by a member, beneficiary, annuity beneficiary, or other party in relation to or on behalf of a member,

6

beneficiary, or annuity beneficiary, the three-year period of limitation shall not be deemed to commence or to have commenced until the system discovers the incorrect payment." (§ 22008, subds. (a)-(d).)

The parties agree that subdivision (c) in particular applies to this proceeding, and the relevant statute of limitations runs from "the discovery of the incorrect payment." (§ 22008, subd. (c).)

### 1. Actual Notice

The superior court did not exercise its independent judgment to evaluate the evidence and concluded that whether the 2005 letter constitutes actual or inquiry notice is a conclusion of law. "Resolution of the statute of limitations issue is normally a question of fact." (*Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 810.) CalSTRS agrees with the superior court that the question is one of law and cites the principle that unless the interpretation of a written instrument turns upon the credibility of extrinsic evidence, it is a question of law that we review de novo. (*Parsons v. Bristol Development Co.* (1965) 62 Cal.2d 861, 865-866.) Contrary to what is suggested by this argument, the letter is not a contract to be interpreted pursuant to the canons of contract interpretation. The letter is an item of evidence introduced to demonstrate what CalSTRS knew. In other words, the question before us is not the interpretation of the text of the letter but whether the existence of the letter demonstrates knowledge on the part of CalSTRS. We conclude the superior court's determination that the 2005 letter, as a matter of law, constituted actual notice to CalSTRS was error. Under the facts presented here, determining whether the letter triggered the statute of limitations is a question of fact. The letter refers only to one individual and unspecified "additional employer reporting or an internal correction to [her] account." What that reporting or correction was, beyond what was reflected in the recalculation, is not explained. The letter does not demonstrate actual notice regarding errors in coding of the $1,750 payments to any of the retirees or that there was an error in coding of the 25 percent payment as to a different

7

retiree. The letter simply does not inform CalSTRS of the errors at issue in this litigation. As such, the letter neither constitutes actual notice as a matter of law nor would it constitute sufficient evidence to support a factual finding of actual notice. The letter is, however, relevant to the question of whether CalSTRS should have investigated the District's reporting practices generally. The critical question in this case is whether inquiry notice is sufficient to trigger the statute of limitations set forth in section 22008, subdivision (c).

### 2. *Inquiry Notice*

"[T]he standards we employ in interpreting statutes of limitation have been well-established. Our function, as with the construction of any statute, is to ascertain the intent of the Legislature so as to effectuate the purpose of the law. In the first instance, we look to the plain meaning of the statutory language. If further analysis is necessary, we apply a reasonable and commonsense interpretation, avoiding absurdity. [Citation.] We also consider the legislative purpose and public policy particularly relevant to statutes of limitation. In general, the legislative purpose behind such statutes is to prevent plaintiffs from asserting stale claims. At the same time, public policy favors the resolution of claims on the merits. Therefore, in ascertaining a limitations period, we must strike a balance 'between the public policy favoring extinction of stale claims and that favoring resolution of disputes on their merits.' " (*Debro v. Los Angeles Raiders* (2001) 92 Cal.App.4th 940, 948-949 (*Debro*).)

The parties dispute whether the "discovery of the incorrect payment" under section 22008, subdivision (c) includes inquiry notice. We conclude that it does. "[T]he term 'discovery' is not foreign to California's statutes of limitation." (*Debro, supra,* 92 Cal.App.4th at p. 950.) In this context, the weight of authority interprets the concept of "discovery" to include inquiry notice. (See, e.g., *Pedro v. City of Los Angeles* (2014) 229 Cal.App.4th 87, 106 ["[T]he one-year limitations period under Government Code section 3304, subdivision (d)(1) begins to run when a person authorized to initiate an

8

investigation discovers, or through the use of reasonable diligence should have discovered, the allegation of misconduct"]; *Deveny v. Entropin, Inc.* (2006) 139 Cal.App.4th 408, 419, 423 (*Deveny*) [concluding inquiry notice was sufficient to trigger running of limitations period under statute that provided action must be brought before " 'the expiration of one year after the discovery by the plaintiff of the facts constituting the violation' "]; *Debro, supra,* at pp. 948, 950-951 [interpreting "discovery" to include inquiry notice in statute of limitations that commenced " '*after the date of discovery by the official of the state or political subdivision charged with responsibility to act*' "].) This interpretation balances the policy of avoiding stale lawsuits with the policy of providing a reasonable time for the discovery of a claim. (*Debro, supra,* at p. 950.)

One exception to the weight of authority is *Eisenbaum v. Western Energy Resources, Inc.* (1990) 218 Cal.App.3d 314 (*Eisenbaum*), which is relied upon by CalSTRS. The court in *Eisenbaum* held that actual notice was required to trigger the limitations period under Corporations Code section 25507, subdivision (a) for two reasons. First, the case involved a fiduciary relationship. The court noted, "Where a fiduciary obligation is present, the courts have recognized a postponement of the accrual of the cause of action until the beneficiary has knowledge or notice of the act constituting a breach of fidelity. [Citations.] The existence of a trust relationship limits the duty of inquiry." (*Eisenbaum, supra,* at p. 324.) Here, the Board has "the sole and exclusive fiduciary responsibility over the assets of the . . . retirement system" (Cal. Const., art. XVI, § 17, subd. (a)), but CalSTRS has not demonstrated that the District owed it a fiduciary duty. The District was required to furnish information required by the Board (§ 22455), but CalSTRS offers no authority for its suggestion that a statutory requirement to provide information to a governmental entity is enough to transform the provider of that information into the agency's fiduciary. Case law relied upon by the District suggests it had duties, but not that those duties rose to the level of making it CalSTRS's fiduciary. (See *City of Oakland v. Public Employees' Retirement System* (2002) 95

9

Cal.App.4th 29, 40 [explaining in parenthetical that "once local agency entered into [Public Employees' Retirement System] contract, it, too, had duty to properly classify employee"].)  Second, the *Eisenbaum* court interpreted the language of the statute at issue in that case as requiring actual knowledge of the facts:  "The critical focus here is found in the language of the section 25507, subdivision (a), which requires '*discovery ... of the facts*.'  (Italics added.)  The statute requires Eisenbaum's *actual knowledge of the facts before the one-year statute commences to run*.  By its plain language, the statute requires actual knowledge, not just 'inquiry notice.' "  (*Eisenbaum, supra,* at p. 325, fn. omitted.)  *Eisenbaum*'s discussion of inquiry notice in this context has, however, been subsequently disregarded as dicta.  (*Deveny, supra,* 139 Cal.App.4th at p. 422.)  Because the District does not owe CalSTRS a fiduciary duty, and we find the discussion of inquiry notice to be unpersuasive, we decline to apply *Eisenbaum* to interpret section 22008.

Furthermore, as other courts construing "discovery" to include inquiry notice have observed, our conclusion is consistent with Civil Code section 19, which reads:  "Every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact, has constructive notice of the fact itself in all cases in which, by prosecuting such inquiry, he might have learned such fact."  (Civ. Code, § 19; see *Deveny, supra,* 139 Cal.App.4th at p. 421; *Debro, supra,* 92 Cal.App.4th at p. 950.)  This statute has also been employed by our Supreme Court to explain its longstanding recognition that the statute of limitations currently set forth in Code of Civil Procedure section 338, subdivision (d),[4] governing actions for relief on the ground of fraud or mistake, begins to run on inquiry notice.  (*Hobart v. Hobart Estate Co.* (1945) 26 Cal.2d 412, 437.)  We see no reason that the principles codified in Civil Code section 19 would

---

[4]  Code of Civil Procedure section 338, subdivision (d) provides this cause of action does not accrue "until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake."

10

not apply in the present action. The statutory language at issue in this case was added to the Education Code well after our Supreme Court definitively concluded that "discovery" includes inquiry notice for the purposes of Code of Civil Procedure section 338, subdivision (d). (Stats. 1988, ch. 739, § 1 [former § 22007, subd. (c)] [statute of limitations regarding erroneous payment due to inaccurate information "shall commence with the discovery of the erroneous payment"].) "Given the Legislature's presumed understanding of the judicial interpretation of the term 'discovery' in other statutes of limitation, it is reasonable to assume that it would have used a word other than 'discovery' if it intended for the limitations period to commence only upon actual knowledge of a violation." (*Debro, supra,* at p. 953.)

Given the settled meaning of "discovery" in the context of a fraud action under Code of Civil Procedure section 338, subdivision (d), we must presume the Legislature understood that inquiry notice also applies to the use of the term "discovery" in section 22008. (See *People v. Lopez* (2003) 31 Cal.4th 1051, 1060 ["When legislation has been judicially construed and a subsequent statute on a similar subject uses identical or substantially similar language, the usual presumption is that the Legislature intended the same construction, unless a contrary intent clearly appears"].) The Legislature has also demonstrated that it knows how to require actual notice when that is the desired construction. For example, Code of Civil Procedure section 338, subdivision (c)(3)(A) provides that the statute of limitations for an action for the specific recovery of a work of fine art commences to run on "actual discovery." This statute further provides that "actual discovery" does not include constructive knowledge "notwithstanding Section 19 of the Civil Code." (Code Civ. Proc., § 338, subd. (c)(3)(C)(i).) Section 22008, subdivision (c) contains no such exception from the concepts of constructive knowledge and inquiry notice, and we will not provide one.

CalSTRS argues we must give great weight to its interpretation of the statute. Whether and to what extent we give deference to an agency's interpretation is situational.

11

(*Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 12.)  In this case, no quasi-legislative rule is involved, and the interpretation of section 22008 does not require any particular administrative expertise.  Therefore, we are not obligated to defer to CalSTRS's interpretation.  (See *Yamaha Corp. of America v. State Bd. of Equalization, supra*, at p. 12.)  Ultimate responsibility for the construction of a statute rests with the court.  (*Id*. at p. 7.)  This case presents not so much a question of what "discovery" means in the context of section 22008 as a question of how California law works regarding inquiry notice generally.  The fact that CalSTRS may have interpreted section 22008, subdivision (c) not to include the concept of inquiry notice does not persuade us to adopt its interpretation.**[5]**

The superior court did not address the question of inquiry notice and we are not able to resolve the question because it is a question of fact.  "[T]he date that a person in the exercise of reasonable diligence should have discovered the facts is a question of fact."  (*Pedro v. City of Los Angeles, supra,* 229 Cal.App.4th at p. 106.)  The superior court concluded incorrectly that evaluating whether the 2005 letter constituted actual or inquiry notice was a question of law.  A letter describing one error is not sufficient *as a matter of law* to put the agency on notice of other errors.  Whether the letter provided inquiry notice turns on the specific facts and context surrounding that letter.  Here the facts as a whole are susceptible to opposing inferences regarding whether they were sufficient to put a reasonable person on inquiry notice of the overall reporting problems.  Accordingly, this case presents a question of fact.  (See *Deveny, supra,* 139 Cal.App.4th at p. 430 [concluding that posting information on company's website and referring investors to the website for general information was not sufficient for inquiry notice as a

---

**[5]**  While the parties and the superior court are in agreement that the ALJ determined that actual notice was required, we have not identified any portion of the decision adopted by CalSTRS that squarely addresses this issue.

12

matter of law but, instead, raises a question of fact].) This question was apparently never addressed by the administrative decision nor properly addressed by the superior court's ruling. For these reasons, it is inappropriate to do as the District argues and imply that the superior court made a factual finding of inquiry notice. Instead, we will reverse and remand for further proceedings.

We decline to address CalSTRS's arguments regarding continuous accrual because they were not raised in the superior court, and can now be addressed on remand.

### III.  DISPOSITION

The judgment is reversed and the cause is remanded to the superior court for further proceedings consistent with the views stated herein. The parties shall bear their own costs on appeal. (Cal. Rules of Court, rule 8.278(a)(5).)


/S/

_____
RENNER, J.


We concur:


/S/

_____
RAYE, P. J.


/S/

_____
MAURO, J.


13